Charles MARTIN, Plaintiff,

v.

BELL HELICOPTER COMPANY, Division Textron Incorporated, and Avco-Lycoming Engine Group, Defendants.

Diana L. HODGE et al., Renee Patterson, et al., and Robert P. Broderick, Plaintiffs,

v.

BELL HELICOPTER COMPANY et al., Defendants.

Elizabeth Jane LOWE et al., Plaintiffs,

v.

BELL HELICOPTER COMPANY et al.,

Sam A. JONES et al., Plaintiffs,

v.

BELL HELICOPTER COMPANY et al., Defendants.

Patricia Diane Hester GUIDRY et al., Plaintiffs,

v.

BELL HELICOPTER COMPANY et al., Defendants.

Douglas Paul SHARPE, Gregory L. Hopkins and Michael E. Jones, Plaintiffs,

v.

BELL HELICOPTER COMPANY et al., Defendants.

Civ. A. Nos. 77–F–533 and 77–F–631 to 77–F–635.

United States District Court, D. Colorado.

Feb. 8, 1980.

David L. Worstell, Louis A. Weltzer, Worstell & Weltzer, Denver, Colo., Michael J. Kutsko, Ronald Mullin, Kutsko, Moran & Mullin, San Francisco, Cal., James A. Wysocki, Windhorst, Heisler, deLaup & Wysocki, New Orleans, La., Arthur K. Underwood, Jr., Dawson, Nagel, Sherman & Howard, Denver, Colo., for plaintiffs.

James L. Tilly, L. Jay Labe, Tilly & Graves, Denver, Colo., John W. Sheehy, Jr., Marron, Reid & Sheehy, San Francisco, Cal., Clinton H. Coddington, Tucker & Coddington, Palo Alto, Cal., for defendant Bell Helicopter Co.

William Owen, James Michael Allen, Owen, Melbye & Rohlff, Redwood City, Cal., Lewis M. Quigg, Peterson & Fonda, P. C., Pueblo, Colo., for defendant Avco-Lycoming Engine Group.

## INTRODUCTION

SHERMAN G. FINESILVER, District Judge.

This Multi-party case arises from the crash of an Army model UH–1H helicopter at Fort Carson, Colorado, on October 7, 1975. Defendant Bell Helicopter Company [Bell] manufactured the helicopter, while Defendant Avco-Lycoming Engine Group [Avco] manufactured the helicopter engine. All passengers in the helicopter were military servicemen. As a result of the crash, five deaths occurred and five persons incurred injuries of various degrees of seriousness. Of the surviving passengers, plaintiff Charles Martin suffered the most serious injuries, including alleged closed head trauma, complete spinal cord transection and paraplegia.

The plaintiffs reside in numerous states and include persons injured in the crash and surviving relatives of persons killed. Jurisdiction of this Court is founded on 28 U.S.C. § 1332. Damages are sought totaling several millions of dollars.

All of the cases except that of Charles Martin were originally filed in the United States District Court for the Northern District of California. We shall refer to the plaintiffs in those cases as "the California plaintiffs." Those cases were transferred to this Court pursuant to 28 U.S.C. § 1404(a). The cases of all the plaintiffs were consolidated with the *Martin* case filed in Colorado.

In an earlier order we determined that the transferor Court would have applied California law to the cases originally filed there. Accordingly, the claims of the California plaintiffs are to be tried in accordance with the unique law of strict liability in California. In the Martin case, the claims for recovery are founded on both negligence and strict liability under the law of Colorado. Different measures of damages exist in the two forums.

This order summarizes both prior orders and establishes a blueprint for trial. Where inconsistent, this order supersedes earlier orders on the same subject.

The objectives of trial management which the Court pursues in this order and throughout the litigation are succinctly set forth in the Federal Rules of Civil Procedure and in the Federal Rules of Evidence. Rule 1, Federal Rules of Civil Procedure, sets the spirit and tenor of litigation in the federal courts by providing that the Rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." Rule 102, Federal Rules of Evidence likewise provides that "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

## JURY MATTERS

### I.

■ The complexity of the issues presented in these cases, and the tremendous volume of exhibits and testimony which are to be presented, suggest that considerable judicial economy and reduction of the costs of litigation can be achieved by trying all the cases at one time. However, the California law of strict liability, under which all plaintiffs except Mr. Martin are seeking recovery, is unique and differs significantly from the law of Colorado. Therefore, the Court is DIRECTING that two juries be empaneled and that there be separate trials of liability and damages as discussed later in this Order. The first trial will involve the issues of liability. Jury A will hear the evidence and be instructed in accordance with the California law of strict liability. Jury B will hear the evidence and be instructed in accordance with the Colorado law of negligence and strict liability.

Upon consideration of the point, the Court has concluded that there is no substantive or procedural prohibition to the empaneling of two juries as outlined in this Order. The Court is of the view that such a procedure is particularly appropriate in a case such as the instant case, where a substantial reduction of both court time and costs of litigation can be achieved through use of two juries.

In order to protect the integrity of each jury, careful measures will be observed to prevent any contact between members of the two juries in court or during recesses. Appropriate cautionary instructions will be given. The two juries will also be kept physically separated in the courtroom and use different jury rooms. Although the Court anticipates that most of the evidence to be presented will be admissible under the law of California and of Colorado, each of the juries will be excused from the courtroom from time to time while the other jury hears evidence admissible only under the law of one of the States.

Counsels' opening statements are to be general, and avoid discussion of specific elements of theories of recovery. No labels are to be placed on theories of liability. In this manner, the Court anticipates that both juries will be able to hear opening statements simultaneously. The juries will be empaneled separately, will hear separate closing arguments, and will, of course, be instructed separately. Plaintiffs' counsel will be afforded an hour and fifteen minutes for opening statements and counsel for Bell and Avco will each be afforded forty-five minutes.

### II.

Selection of the juries will proceed as follows. The first group of approximately 35 persons will be brought into the courtroom. From the venire, the courtroom deputy will select the names of twenty persons. The Court will voir dire the panel and will excuse individuals for cause if appropriate. Although the Court will conduct the voir dire, counsel may submit appropriate questions.

After completion of voir dire, counsel will be permitted to exercise preemptory challenges on a written list containing the names of the twenty persons. The courtroom deputy will present the jury list to plaintiffs' counsel who will anonymously exercise the first challenge on the written jury list containing the twenty names. The list will then be passed to defense counsel, who will exercise the second challenge again anonymously. The process shall continue until each side has had an opportunity to exercise a total of five challenges. Defendants' five challenges shall be jointly exercised. After the exercise of challenges, ten jurors will thus remain in the jury box and constitute the jury in the case at hand. There will be no public announcement of what party excused a juror.

After Jury A (California Jury) has been excused from the courtroom and retires to the jury room, the entire process will be repeated and Jury B (Colorado Jury) will be selected in the same manner.

### III.

Counsel for the parties have variously estimated that the total time required for

the trials will be from six weeks to several months. With proper preparation, stipulations, and case management, the Court is of the view that the liability phase of the case can be concluded in three weeks. The Court has concluded that the trial should be bifurcated pursuant to Rule 42(b) of the Federal Rules of Civil Procedure. Trial of liability will proceed first.

The Court has further decided that every effort will be made to have the same two juries hear the damage phase of the trial in the event that liability is found. As a result, the Court believes it necessary to begin the liability trial with a large pool of jurors. This view is particularly strong in light of the anticipated length of trial, which increases the risk of attrition of jurors as a result of personal emergencies.

█ Because of the considerations of length of trial and desire to have the same juries hear the damage phase of the trial, the Court has decided that 10 jurors will be used for both Jury A and Jury B. The Supreme Court has decided that local rules providing for juries of six are constitutional, *Colgrove v. Battin*, 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973). Local Court Rule 7(c) provides for juries of six in civil actions. Rule 22 of the Local Rules of Court, however, permits modification of the rules to avoid injustice and hardship.

Our legal research fails to indicate any prohibition of the use of 10 jurors in a civil case. Although we are not unmindful of the Local Rule calling for six jurors, the Court is of the view that the exigent conditions of this litigation support a modification of that Rule. Therefore, the Court will direct that 10 jurors will sit on each of the two juries in this case. The jurors on each jury who are present at the time that deliberations commence shall participate in those deliberations. No jury alternates will be selected. Nothing herein negates the requirement of unanimity of the jury verdict on jury questions.

### IV.

There shall be no note taking by jurors. A weekly list of witnesses testifying will be provided to jurors with the date and time (a. m. or p. m.) of the testimony. This will enable jurors to recall witnesses and testimony. Individual sets of written instructions will be made available to jurors at such time as the case is ready for submission.

Counsel are to agree on select exhibits that are to be *individually* provided to jurors. Appropriate sets of exhibits are to be provided. Jurors will not be allowed to take the exhibits out of the courtroom.

### SEPARATE TRIALS

### I.

We have directed that there be separate juries for plaintiff Martin, suing under Colorado law, and other plaintiffs who filed suit under California law. Plaintiff Martin's suit is based on theories of strict liability and negligence while other plaintiffs sue under California's unique strict liability law. The measures of damages in Colorado and California in personal injury cases are substantially different. Thus, compelling reasons are present for use of separate juries in both the liability and damage phases of this action.

Rule 42(b), Federal Rules of Civil Procedure permits the Court to "order a separate trial of any claim . . . or of any separate issue . . . or issues." Stated more fully, the rule reads:

> "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, . . . or of any separate issue or of any number of claims, cross-claims, . . . or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States."

█ We have carefully considered the contentions of the parties on the question of separate trials and reviewed the various aspects of this multi-party and multi-facet-

ed litigation. We are persuaded that separate trials as to liability and damages should be held. Trials on liability will proceed initially, followed thereafter, and at a later time, by damage trials.

In making this ruling, we have weighed the factors outlined herein. We expressly determine that separate trials of liability and damages are in furtherance of convenience to the litigants, counsel, and the court, that prejudice to any party will be avoided, and that separate trials are most certainly conducive to expedition and economy.

In determining whether to order separate trial of issues, the following are considerations weighed by the court.

1. Will separate trials be conducive to expedition of the litigation and economy?

2. Will separate trials be in furtherance of convenience to the parties and avoid prejudice?

3. Are the issues sought to be tried separately significantly different?

4. Are the issues triable by jury or by the court?

5. Has discovery been directed to single trial of all issues or separate trials?

6. Will substantially different witnesses and evidence be required if issues are tried separately?

7. Will a party opposing severance be significantly prejudiced if it is granted?

8. Will an unfair advantage be afforded to a party if bifurcation is granted?

9. Will management of trial, delineation of issues, and clarity of factual questions be substantially enhanced by bifurcation?

10. Will bifurcation assist efficient judicial administration of the case?

*See, e. g. United Air Lines v. Wiener*, 286 F.2d 302, 306 (9th Cir.), *cert. denied* 366 U.S. 924, 81, S.Ct. 1352, 6 L.Ed.2d 384 (1961); *Washington Whey Co. v. Fairmont Foods Co.*, 72 F.R.D. 180 (D.Nev.1976); *Payton v. Abbott Labs*, 83 F.R.D. 382, 394–395 (D.Mass.1979).

## II.

"[T]he decision to grant or deny separate trials under . . . Rule 42(b) is one committed to the sound discretion of the trial court . . . ." *Warner v. Rossignol*, 513 F.2d 678, 684 (1st Cir. 1975). *Accord, In re Master Key Antitrust Litigation*, 528 F.2d 5, 14 (2d Cir. 1975); *Garber v. Randell*, 477 F.2d 711 (2d Cir. 1973).

Separate trial of separate issues "must be grounded upon a clear understanding between court and counsel of the issue or issues involved in each phase and what proof will be required to pass from one phase to the next." *State of Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 319 (5th Cir. 1978), quoting *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1324 (5th Cir. 1976) (footnote omitted). *See, e. g., Warner v. Rossignol*, 513 F.2d 678, 684 (1st Cir. 1975); *Moss v. Associated Transport, Inc.*, 344 F.2d 23, 26 (6th Cir. 1965); *United States v. International Business Machines Corp.*, 60 F.R.D. 654, 657 (S.D.N.Y.1973).

While economy and convenience may properly be considered in the decision to bifurcate, neither is the ultimate objective. "A paramount consideration at all times in the administration of justice is a fair and impartial trial to all litigants. Considerations of economy of time, money and convenience of witnesses must yield thereto." *Baker v. Waterman*, 11 F.R.D. 440 (S.D.N.Y.1951). *See, also, Moss v. Associated Transport, Inc., supra*. However, "it is the interest of efficient judicial administration which is to be considered, rather than the wishes of the parties." 9 Wright & Miller, *Federal Practice and Procedure* § 2388 at 279.

One purpose behind Rule 42(b) is the deferral of costly and potentially unnecessary discovery and trial preparation on other phases of the case pending resolution of preliminary dispositive issues. *See, Ellingson Timber Co. v. Great Northern Ry. Co.*, 424 F.2d 497 (9th Cir.), *cert. denied*, 400 U.S. 957, 91 S.Ct. 354, 27 L.Ed.2d 265 (1970).

While the most common example of bifurcation occurs in the separate trial of the

issues of liability and damages in personal injury actions, *Crummett v. Corbin*, 475 F.2d 816 (6th Cir. 1973), courts have bifurcated issues for trial in a wide variety of cases. *See, LoCicero v. Humble Oil & Refining Co.*, 52 F.R.D. 28 (E.D.La.1971) (antitrust); *Ellison v. Rock Hill Printing & Finishing Co.*, 64 F.R.D. 415 (D.S.C.1974) (employment discrimination); *Baxter v. Savannah Sugar Refining Corp.*, 495 F.2d 437 (5th Cir. 1974), *cert. denied*, 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1975) and *Love v. Pullman Co.*, 21 F.R.Serv.2d 629 (D.Colo. 1975) (class actions); *Singer v. Dorr*, 38 F.R.D. 167 (E.D.La.1965) (admiralty); *Shepard v. International Business Machines Corp.*, 45 F.R.D. 536 (D.C.1968) (patents). *See also Rossano v. Blue Plate Foods, Inc.*, 314 F.2d 174 (5th Cir.), *cert. denied*, 375 U.S. 866, 84 S.Ct. 139, 11 L.Ed.2d 93 (1963); *Bernardo v. Bethlehem Steel Company*, 200 F.Supp. 534 (S.D.N.Y.1961), *aff'd*, 314 F.2d 604 (2d Cir. 1963); *Joplin v. United States*, 74 F.R.D. 4 (E.D.Okl.1976); J. B. Pegram, "Separate Trials in Patent-Antitrust and Patent-Unenforceability Litigation," 64 F.R.D. 185 (Nov.1974); Annot., "Antitrust: separate trials under Rule 42(b) of Federal Rules of Civil Procedure of claims or issues in suit involving federal antitrust laws," 12 A.L.R.Fed. 831 (1972); Weinstein, "Routine Bifurcation of Negligence Trials," 14 Vand. L.Rev. 831 (1961).

In deciding to bifurcate the issues of liability and damages in these cases, the Court has weighed the various factors outlined above. For the reasons discussed, the Court is satisfied that the interests of the parties, including the right to trial by jury, can be protected while enhancing the efficiency and economy of this litigation.

## III.

The express terms of Rule 42(b) caution that the court, in ascertaining the propriety of a bifurcation order, must "always [preserve] inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution."

■ Where, however, different juries are empaneled to sit in separate trials of issues in the same case, the United States Supreme Court has stated that the issues must be "so distinct and separable" that they may be tried separately "without injustice." When issues are "so interwoven" that their independent trial would cause "confusion and uncertainty, which would amount to a denial of a fair trial," they must be tried together. *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931).

■ Elaborating further, there is no constitutional problem in ordering separate trial of issues with the same jury to sit in each trial. Indeed, where a jury trial is bifurcated, this is probably the preferred practice. Wright & Miller, *Federal Practice and Procedure* § 2391 at p. 302. Some question has been raised whether issues can be ordered tried to different juries. That is, as Wright and Miller put it, the question may be posed

". . . whether the admittedly preferred procedure is constitutionally required. It has been held on sound ground, that the Seventh Amendment is not violated by the separate submission of the issues to a single jury. Is there a violation of the constitutional provision if issues are separately submitted to separate juries? The answer rather clearly must be in the negative."

Wright & Miller, *Federal Practice and Procedure* § 2391 at p. 302 (citations omitted).

The analogy is to the situation where an appellate court reverses, in part, a jury verdict and remands for a new trial on a limited issue. In such a case, the practical effect is that different juries resolve the issues. The Supreme Court has expressly approved that procedure (at least where the issues are separate and distinct), *Gasoline Products Co. v. Champlin Refining Co., supra.* It should follow that the Court would approve the use of two juries in the first instance.

■ Those courts which have dealt with the issue have done so in accordance with the principle that submission to different juries is permissible so long as the issues are separate and distinct. A decision whether

to use the same or separate juries must be made, therefore, on an individual case basis. It must be considered whether the issues are intertwined or are distinct; then (if distinct), the interests of judicial economy, fairness to the parties, clarity of issues, and convenience must also be weighed.

In an early pronouncement, the Ninth Circuit Court of Appeals found a particular submission to two juries to be impermissible. *United Airlines v. Wiener*, 286 F.2d 302 (9th Cir.), *cert. denied*, 366 U.S. 924, 81 S.Ct. 1352, 6 L.Ed.2d 384 (1961). On the facts of that case (a personal injury suit arising out of an airplane crash), the court found that the issues of liability and damages were so interwoven that they must be submitted to a single jury. The court expressly left open the question whether there might be a case where submission to two juries could be permissible, merely ruling that the particular submission before it was improper. The First Circuit has, similarly, found a particular submission to be improper because of interwoven issues. *Franchi Const. Co. v. Combined Ins. Co. of America*, 580 F.2d 1, 7–8 (1st Cir. 1978).

The Ninth Circuit has recently come back to that question holding that submission to two juries is permissible. *Arthur Young & Co. v. United States District Court*, 549 F.2d 686 (9th Cir.) *cert. denied*, 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977). In that securities case, on application for writ of mandamus, the court stated that

> "Assuming the first trial is heard and the class issues determined by one jury . . . we perceive no absolute bar, constitutional or otherwise, to resolution of any remaining issues before either the same or a second jury."

549 F.2d at 693. Thus, so long as the issues are not interwoven, two juries may be used. *See also, In re Gap Store Securities Litigation*, 79 F.R.D. 283, 305 n. 22 (N.D.Cal.1978).

The Seventh Circuit has not squarely addressed the issue. In *Hosie v. Chicago & N. W. Ry. Co.*, 282 F.2d 639 (7th Cir.), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1960), it expressly reserved ruling. 282 F.2d at 642. The Second and Third Circuits have likewise reserved ruling on the issue. *In re Master Key Antitrust Litigation*, 528 F.2d 5, 15 (2d Cir. 1975); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3rd Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860 (3rd Cir. 1977). The district courts in that circuit have, however, held it to be permissible to submit to different juries. *O'Donnell v. Watson Bros. Trans. Co.*, 183 F.Supp. 577, 585 (N.D.Ill.1960); and *see, In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 736 n. 10 (N.D.Ill.1977).

The Fifth Circuit has approved the submission of issues to different juries in a proper case, at least by implication. *State of Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309 (5th Cir. 1978), *aff'g*, 71 F.R.D. 606, 614–615 (M.D.Ala.1976); *Swofford v. B & W Inc.*, 336 F.2d 406, 415 (5th Cir. 1964), *aff'g*, 34 F.R.D. 15 (S.D.Tex.1963), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). In both of those cases, the district court had determined to bifurcate the proceedings and to submit to different juries.

In summary, the submission of issues to two separate juries is permissible to long as the issues are separate and distinct. As noted, a decision whether to use the same or separate juries must therefore be made on an individual case basis. We do not decide at this time whether the issue of damages will be submitted to the same two juries which hear the liability phase of these cases. The principles outlined above will provide the benchmarks that will guide the Court in resolving this question following the completion of the liability phase of the trial.

## TRIAL SCHEDULE AND WITNESSES

Proceedings in this case will commence on Monday, February 11, 1980 at 9:00 a. m. and will proceed each day commencing at 9:00 a. m. and continue to 6:00 p. m. The Court presently anticipates that approximately two evening sessions per week will be held. The Court further advises counsel that the Court tentatively plans to hold

trial on Saturday, February 17, 1980 and on Monday, February 18, 1980 which is a national holiday.

During the entire course of the trial in their or its case in chief, counsel shall have three witnesses available at all times. Exhibits and depositions shall be arranged so as to be readily accessible to the witnesses at the appropriate times. By Wednesday, February 13, 1980, counsel for plaintiffs shall file a complete list of all witnesses, stating length of testimony, subject area of testimony, identification of exhibits to be introduced by the witness, and professional resume in the case of expert witnesses.

The Court will closely monitor unnecessary or repetitive testimony and will adhere to the direction of Rule 403, Federal Rules of Evidence. The Rule states:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

## SANCTIONS, DISCOVERY, AND MOTION PRACTICE

### I.

This case has been years in preparation and financial cost of trial is substantial. We anticipate a smooth running trial. However, aspects of sanctions and discipline are reviewed here.

Discovery and personal disputes take up an inordinate amount of judicial time. Often, unnecessarily, they present obstacles to steady progression of cases to trial and add to the cost of litigation.

In resolution of discovery disputes, the Court will assiduously adhere to sanctions that may be imposed within the specifics of Rule 37 Federal Rules of Civil Procedure. Rule 37 provides for sanctions against witnesses, parties and attorneys for refusal to make discovery. *See State of Ohio v. Crofters,* 75 F.R.D. 12 (D.Colo.1977), *aff'd* 570 F.2d 1370 (10th Cir. 1978), *cert. denied,* 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978).

We note that under 28 U.S.C. § 1927, the Court may sanction counsel for dilatory tactics through imposition of liability for excessive costs. The statute reads:

Any attorney or other person admitted to conduct cases in any court who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs.

### II.

This case has been marked with a myriad of motions—some of questionable bases. Under Rule 11, Federal Rules of Civil Procedure, the signature of an attorney constitutes a *certificate by him* or *her* that the pleading has been read; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. For willful violation of this rule an attorney may be subjected to appropriate disciplinary action and imposition of costs on the party who introduced the pleading. The purpose of the signature is to hold an attorney to "strict accountability" in the *bona fides* of motions. The signature rule is designed to encourage fair dealing and honesty in the bar when bringing and defending motions and actions.

We point out that Rule 11 relates to *all motions.*

### III.

In light of the Court's concern over the level of cooperation among counsel for the parties, and over the degree of cooperation of counsel with the Court, in addition to adherence with noted provisions of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, the Court enters the following Order.

All motions filed with the Court shall be accompanied by an affidavit of counsel indicating that counsel for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to

the filing of the motion, and has made every effort to resolve the matter without the necessity of judicial intervention.

## IV.

The Court has inherent power to assess attorneys' fees and costs against a party for willful disobedience of a court order, actions in bad faith, or for harassing or vexatious action. The Court has a wide range of available disciplinary powers and alternatives under the inherent power of the Court to manage the essential aspects of trial and insure fairness to all litigants.

## V.

Excessive and unreasonable listing of documents or witnesses, which impose onerous and time-consuming burdens on opposing counsel, shall be considered sanctionable, *i. e.* if it appears at or after the trial that a party has abused the spirit and tenor of the pretrial order in that fashion or manner, sanctions may be imposed.

## CONCLUSION

The use of two juries simultaneously, the use of ten-member juries, and separate trials of liability and damages all differ from traditional trial procedures. As discussed above, such procedures are permitted by applicable law. Each procedure has been selected after careful weighing of various alternatives.

In selecting among the various procedures available, the Court has been guided by the unique characteristics of this litigation, the interests of the parties and the interest of all concerned in efficiency and economy. We are of the view that the procedure outlined in this Order provides a fair framework for trial of this multi-party action.