UNION BANK OF BAVARIA, Plaintiff,

v.

William Henry BELK, Defendant.

No. 80–0062.

United States District Court,
W. D. North Carolina,
Charlotte Division.

April 8, 1981.

**1118**

Edgar Love, III, Kennedy, Covington, Lobdell & Hickman, Charlotte, N. C., for plaintiff.

Carl W. Howard, Charlotte, N. C., for defendant.

## ORDER

McMILLAN, District Judge.

I. *Facts*

This action arises out of defendant William Henry Belk's guaranty of a $2,000,000 loan made by plaintiff Union Bank of Bavaria ("UBB") to Avery's, Inc. ("Avery's"), a corporation of which Belk is the primary stockholder.

The essential facts of the case are undisputed. In an agreement signed July 25, 1979, UBB agreed to lend $2,000,000 to Avery's. Avery's promised to pay the principal and interest on the loan by October 25, 1979. After receiving the money, Avery's failed to pay the bank by October 25, 1979. Shortly after that date, Avery's gave UBB

a promissory note for $2,086,305.56, covering principal and accrued interest on the loan. The note specified certain conditions under which UBB could demand payment.

Belk and J. Richard Avery, vice president and also a part-owner of Avery's, each unconditionally guaranteed payment of the note. On January 25, 1980, UBB demanded payment of the note by letter to Avery's and to the guarantors. UBB has not yet been paid, and it filed this complaint to recover the principal, interest and attorneys' fees from Belk pursuant to Belk's guaranty. (UBB has filed a similar suit against Avery in the United States District Court for the Southern District of New York.)

Belk does not dispute any of the above facts. But in his amended answer and counterclaims, which he was permitted to file by order of February 10, 1981, Belk alleges that UBB induced the execution of the promissory note by Avery's and his own guaranty through fraudulent misrepresentations, most of which were allegedly committed by Hans Wilhelm Thiele, a vice president of UBB. Belk cites three affirmative defenses to UBB's claim: (1) that the loan agreement and the subsequent promissory note and guaranty were induced by fraudulent misrepresentation; (2) that UBB has materially breached the loan agreement, promissory note and guaranty; (3) that there is no consideration for the agreement.

In his first amended counterclaim, Belk alleges that UBB induced him to sign the note and guaranty of November 2, 1979 by fraudulently misrepresenting that it intended to make a long-term revolving loan to Avery's. He alleges that UBB had no intention of making the loan or participating with another lender in making such a long-term loan. In his second counterclaim, Belk alleges that UBB misrepresented that it agreed to sell certain unissued shares of Avery's stock, and that Belk relied on this misrepresentation in signing the note and guaranty. In his third counterclaim, Belk alleges that after UBB made the above representations, it decided not to honor them without informing Belk of its inten-

tion. Belk claims that this failure to inform him amounts to fraudulent concealment which induced him to sign the note and guaranty agreement of November 2, 1979.

UBB has now moved for summary judgment on Belk's counterclaims and its complaint. The motion was argued before the court on February 9, 1981, and the parties have submitted voluminous memoranda and affidavits on the issues. After reviewing these documents, the court makes the following rulings.

## II. *Belk's Counterclaims*

Belk's counterclaims, as described above, essentially allege that he suffered damages of $10,000,000 because UBB failed to lend Avery's an additional $3,000,000 and failed to sell unissued shares of stock in Avery's. Belk claims that these alleged misrepresentations not only induced him to guarantee the loan, but that they forced him to pledge portions of Belk family stock as collateral for other loans to Avery's and forced him to dispose of that Belk family stock at a fraction of its net worth.

■ Belk's claim that UBB misrepresented that it would lend an additional $3,000,000 fails to state a cause of action for fraudulent misrepresentation or fraudulent concealment. Assuming for the purposes of UBB's summary judgment motion that bank officials did make such representations, such promises to make future loans, without some change of position in reliance on those representations, do not constitute fraud. In support of this proposition, UBB has cited several cases from New York (the jurisdiction cited as controlling in the guaranty) and other states which hold that "[t]he law is well settled that fraud cannot be predicated upon promissory statements." *Central Savings Bank v. Amted Realty Co.,* 274 App.Div. 392, 83 N.Y.S.2d 678, 680 (1948). The Fifth Circuit has affirmed dismissal of a similar fraudulent inducement claim based upon a promise to provide additional mortgage financing and held that "a mere broken promise does not constitute fraud." *Plantation Key Developers, Inc. v.*

*Colonial Mortgage Co.*, 589 F.2d 164, 172 (5th Cir. 1979).

■ Belk maintains that UBB's alleged promises to lend more money are actionable because they were made with the then present intent not to perform them. Even if UBB had no intention of participating in a $5,000,000 revolving loan, UBB's representation that it would participate in such a loan has little relevance to Belk's guaranty, which was signed at a time when his corporation, Avery's, had already defaulted on payment of a $2,000,000 loan!

■ Stripped of legal and factual verbiage, defendant Belk says that in order to save his enterprise, Avery's, from financial disaster, he executed his personal guaranty for a $2,000,000 loan. He denies liability because he says his benefactor welshed on a vaguely stated undertaking to lend an additional $3,000,000! The court cannot imagine how these promises, if made, can rise to the level of fraud, or how the bank, having gotten into a sour loan situation, can be charged with fraud for deciding that it had pumped enough of its capital into an ailing corporation.

The motion of UBB for summary judgment on Belk's first counterclaim is therefore allowed.

■ Belk's second counterclaim, however, presents a different situation. Belk alleges that Thiele, UBB's vice president, stated on several occasions that he had sold, had almost sold or would sell Avery's unissued stock. He cites the depositions of Belk, Avery and Yates C. Dellinger, a vice president of Avery's, in support of his allegations. UBB and Thiele deny that they made such representations.

If true, Belk's claim that UBB misrepresented that it would sell Avery's stock may support a colorable claim of misrepresentation. Those representations involve not merely a sketchy promise to perform an act (without consideration) at an unspecified future date, but an actual representation that UBB had performed—or was performing—an act. The connection between this counterclaim and Belk's damage claims is no less attenuated than the connection between the first counterclaim and his damage claims. It is hardly imaginable that Belk can prove that he suffered losses of $10,000,000 merely because UBB failed to sell some of Avery's stock, as promised. Moreover, it is unlikely in fact that Belk's guaranty had anything to do with the sale of stock, for Avery's was already in default on a $2,000,000 loan. Nonetheless, the allegations in support of his second counterclaim present a factual dispute which is inappropriate for resolution on summary judgment.

Belk, therefore, will be allowed, eventually, to proceed on his second counterclaim, and on his third counterclaim insofar as it relates to the second.

### III. *UBB's Principal Claim*

The primary facts of UBB's principal claim are undisputed. UBB loaned Avery's $2,000,000. Avery's couldn't pay, and so Belk and Avery signed guaranties. UBB properly demanded the money, and Avery's and the guarantors failed to pay. UBB then filed suit to collect on the guaranties.

Belk has raised three affirmative defenses which, if valid, would preclude entry of summary judgment against him.

■ Belk's third defense—that there was no consideration for his guaranty—is patently without merit. UBB's forbearance in collecting the $2,000,000 loan to Avery's provided sufficient consideration for the guaranty of Belk, who was president, a director and a 50% shareholder of Avery's. *See Weyerhaeuser Co. v. Gershman*, 324 F.2d 163, 164–65 (2d Cir. 1963).

■ The first and second defenses, dubious though they appear, involve (apparently) factual disputes as to whether UBB did in fact misrepresent that it had sold or would sell unissued shares of stock in Avery's, and as to whether those misrepresentations did induce Belk to sign the guaranty. Belk's defenses of fraudulent misrepresentation and breach of the loan agreement due to those misrepresentations are just as tenuous as his counterclaims.

Nevertheless, the court cannot dispose of them on summary judgment as long as they present contested issues of fact.

## IV. *Severance of Claims for Trial*

Rule 42(b) of the Federal Rules of Civil Procedure provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... [or] counterclaim ...." To avoid undue prejudice to UBB and to promote economy, the court orders that UBB's claims be separated from Belk's counterclaims for trial.

In determining whether to order separate trials of primary claims and counterclaims, courts have considered several factors, including:

(1) are the issues sought to be separately tried significantly different from one another? (2) are the issues triable by jury or the court? (3) does the posture of discovery as to the respective issues suggest that they should or should not be tried together? (4) will the separate issues require the testimony of different witnesses and documentary proof? (5) will the party opposing the severance be prejudiced if it is granted?

*Reading Industries v. Kennecott Copper Corp.*, 61 F.R.D. 662, 664 (S.D.N.Y.1974). *See also Martin v. Bell Helicopter Co.*, 85 F.R.D. 654 (D.Colo.1980); *Washington Whey Co. v. Fairmont Foods Co.*, 72 F.R.D. 180 (D.Neb.1976).

This case satisfies several of the factors which favor separation of claims for trial. UBB's principal claim—on Belk's $2,000,000 guaranty—is clearcut and significantly different from Belk's counterclaims that UBB's alleged misrepresentations forced him to sell Belk family stock at great loss. The posture of discovery suggests that the claims should not be tried together. Belk's damage claims would require extensive discovery of his finances and the finances of his family. UBB has attempted to depose Belk family members, and they have countered with motions to quash subpoenas for discovery. Discovery with respect to UBB's

principal claim and Belk's defenses has been completed. Only the issue of Belk's damages has not had full discovery. Along with additional discovery, trial of the principal claim and counterclaims together would require testimony of different witnesses and production of different documentary evidence. The evidence necessary to prove the different claims is separate and distinct. Finally, Belk will not be prejudiced by separating the claims for trial. Indeed, UBB would be prejudiced if trial of its claim were continued to accommodate Belk's counterclaims, which appear spurious. UBB stands to lose a large amount of interest on its $2,000,000 loan while trial in this case is delayed.

Severing UBB's claim from Belk's counterclaims allows the principal case to be tried during the court's next jury term. Discovery relevant to Belk's counterclaims will be stayed pending trial of the principal claim.

IT IS THEREFORE ORDERED:

1. That plaintiff's motion for summary judgment on defendant's first counterclaim is allowed.

2. That plaintiff's motion for summary judgment on the remaining counterclaims and the principal claim is denied.

3. That the principal claim and the counterclaims be separated for trial, and that UBB's principal claim be scheduled for trial during the court's next jury term.

4. That discovery relevant to Belk's counterclaims be stayed until further order of the court.