TRI–R SYSTEMS, LIMITED, a Colorado limited partnership, Plaintiff,

v.

FRIEDMAN & SON, INC., a Colorado corporation; Southwest Forest Industries, Inc., a Nevada corporation; and Tamko Asphalt Products, Inc., of Kansas, a Kansas corporation, d/b/a Royal Brand Roofing, Defendants.

Civ. A. No. 79–K–1436.

United States District Court, D. Colorado.

July 13, 1982.

John F. Head, Denver, Colo., for plaintiff.

Robert J. Kapelke, Sheldon E. Friedman, Harry L. Hobson and John M. Vaught, James E. Hautzinger and Robert E. Youle, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an antitrust action. This court has jurisdiction pursuant to 15 U.S.C. § 15 and 28 U.S.C. § 1337. The plaintiff is a limited partnership in the business of buying and selling waste paper. The defendant, Friedman & Son, Inc., ("Friedman"), is one of the largest independent paper dealers in the country and is a competitor of the

plaintiff in the paper selling market. The defendants, Southwest Forest Industries, Inc., ("Southwest") and Tamko Asphalt Products, Inc., of Kansas ("Tamko") are manufacturers who purchase large quantities of paper from the defendant, Friedman. The plaintiff alleges that Friedman has engaged in two conspiracies: one with Southwest and the other with Tamko, in order to restrain trade and maintain its monopoly position in the paper selling market, in violation of sections one and two of the Sherman Act and section three of the Clayton Act, 15 U.S.C. §§ 1, 2 and 14. "Common to all of these claims is the element of a contract, combination or conspiracy which restrains trade, forecloses competition or monopolizes a part of interstate commerce." *Tri-R Systems, Ltd. v. Friedman & Son, Inc.*, 518 F.Supp. 1271, 1273 (D.Colo.1981).

I have previously denied the defendants' motions for summary judgment, holding that there are genuine issues of fact regarding the existence of contracts, combinations or conspiracies between Friedman and the other defendants. *See, id.*[1] This matter is now before me on the defendants, Southwest and Tamko's motions for separate trials pursuant to Rule 42(b), F.R. Civ.P., requesting separate trials for the separate defendants.[2] For the reasons expressed in this opinion, the motions are denied.

"The decision to grant or deny separate trials under Rule 42(b) is one committed to the sound discretion of the trial court." *Warner v. Rosignol*, 513 F.2d 678, 684 (1st Cir. 1975); *Martin v. Bell Helicopter, Co.*, 85 F.R.D. 654, 658 (D.Colo.1980). In *Martin*, Chief Judge Finesilver of this district, in ruling on a Rule 42(b) motion to bifurcate the issues of liability and damages, enumerated ten factors which trial judges should weigh in exercising their discretion to grant or deny separate trials. *Id.* Of those ten factors, I find that three are applicable in determinations whether to order separate trials for separate defendants:[3]

1. Whether separate trials will further the convenience of the parties;

2. Whether separate trials will promote judicial economy;

3. Whether separate trials will avoid substantial prejudice to the parties.

The first factor, convenience to the parties cuts both ways in the instant case. It would be convenient to the plaintiff to have one trial and thereby only have to marshal its time, money and effort once. However, it would be convenient to the defendants to have separate trials and not have to exhaust time, money and effort preparing for the additional considerations present in a joint trial. Each defendant would invariably take precautions to ensure that it is not damaged in the eyes of the jury, from the "spillover effect" of evidence directed against the other defendants.

---

1. Another defendant-buyer alleged to have conspired with Friedman, the Packaging Corporation of America, has entered into a stipulation of settlement with the plaintiff and is therefore, no longer a party to this action.

2. The relationship between "separate trials" under Rule 42(b) and a "severance of claims" pursuant to Rule 21 (dealing with misjoinder), has become obscured by the indistinguished use of the terms "severance" and "separate trials." *See Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358, 361–61 and n.9 (2d Cir. 1974); 3A *Moore's Federal Practice*, ¶ 21.-05[2], P. 21–50 (2d Ed. 1980). While the defendants have filed motions for "severance" I shall treat them as motions for separate trials since they request separate trials pursuant to Rule 42(b).

3. The parties list two additional factors to be considered in the instant case: 1) whether the legal and factual issues to be tried separately would be significantly different; and 2) whether the case is to be tried to the court or to a jury. I find that these factors are really subcategories of other factors. For example, whether the issues tried in the separate actions against the separate defendants would be significantly different bears on whether separate trials would promote judicial economy. Further, whether the case is to be tried to the court or a jury bears on the prejudice to the parties. If this matter were being tried to the court, I would find that there would be no danger of prejudice from a joint trial since judges should be able to sort out the different evidence and claims associated with the different parties.

I find that in any event, the inconvenience to the parties is not particularly compelling. To the extent the plaintiff's claims are meritorious and it prevails at the separate trials, it will be entitled to recoup much of its fees and costs expended in the additional trials. *See Black Gold v. Rockwool*, 529 F.Supp. 272 (D.Colo.1981). Further, the additional time needed by the defendants to prepare for the "spillover effect" in a joint trial does not seem substantial and can be aided by the court's own efforts in determining the order of proof, preparing cautionary jury instructions, using special verdict forms and providing separate tables for the separate defendants.[4]

The second factor, judicial economy, weighs in favor of a joint trial. As previously mentioned, this case involves proof of two illegal conspiracies. The defendant-Friedman's separate trial would involve evidence of its alleged conspiracy with Tamko and its alleged conspiracy with Southwest. The separate trials of Tamko and Southwest would merely repeat the evidence of those conspiracies developed in the Friedman trial with predominantly the same evidence, witnesses and legal issues.[5]

The plaintiff claims that in all of its cases it will present evidence concerning the nature and characteristics of the paper industry, the conduct of Friedman in the relevant buying and selling markets and the conduct of Tri-R in the same markets. Additionally the plaintiff's expert witness will present analyses and conclusions concerning those markets, the market shares, the relevant business practices and the resulting effects on the plaintiff's business. The plaintiff further claims that its expert will apply the same principles and techniques of analysis to each defendant-buyer (Tamko and Southwest) and that only the actual practices and data from the defendant-buyers will differ. Accordingly, considerations of judicial economy weigh heavily against separate trials.

The third factor, prejudice to the parties, weighs in favor of separate trials. There is no apparent prejudice to the plaintiff from having separate trials. However, there is a danger of prejudice to the defendants Tamko and Southwest in the absence of separate trials, from the "spillover effect" of evidence that would be irrelevant and therefore inadmissible at separate trials.

■ "While economy and convenience may properly be considered in the decision [on a motion for separate trials], neither is the final objective." *Martin v. Bell Hellicopter*, 85 F.R.D. at 658. Where there is substantial prejudice, considerations of time, economy and convenience must yield thereto. *See Baker v. Waterman*, 11 F.R.D. 440, 441 (S.D.N.Y.1957).

■ However, the mere possibility of some prejudice does not justify separate trials where such prejudice is not substantial and there are strong countervailing considerations of economy. *See Eichinger v. Fireman's Fund Insurance Company*, 20 F.R.D. 204 (D.Neb.1957); *Grissom v. Union Pac. R.R. Co.*, 14 F.R.D. 263 (D.Colo.1953). Courts recognize that where the degree of potential prejudice is not compelling, the trial judge can often mitigate the suggested prejudice through appropriate jury instructions and other devices. *Grissom* at 263; *accord, Anderson v. Francis I. DuPont & Co.*, 291 F.Supp. 705, 711–12 (D.Minn.1968); *see supra* at 727–728, of this opinion for a

---

4. An argument that such devices cannot adequately mitigate the "spillover effect" does not bear on the inconvenience to the defendants from the additional preparation but rather to whether such devices can alleviate the potential prejudice to the defendants from a joint trial. *See Infra* at p. 728–729 and note 6 of this opinion.

5. I agree with the defendants, however, that evidence of Friedman's conspiracy with one defendant-buyer would not be admissible in a separate trial against another defendant-buyer,

to show a common plan pursuant to Rule 404(b), F.R.E. Such evidence would be of a common plan by Friedman, not of a common plan by either of the defendant-buyers. An example illustrates this principle. If A is alleged to have conspired with B, evidence of a similar conspiracy between A and C may be admissible under Rule 404(b) against A. However, evidence of a separate conspiracy between B and C, would be inadmissible against A.

listing of such devices.[6] Accordingly, the relevant inquiry in the instant case is whether the potential prejudice to the defendants can be adequately mitigated by the court's cautionary measures to the degree that such prejudice is outweighed by considerations of judicial economy.

■ Case law provides very little guidance in determining this calculus. The factual situation here involves a multiple wheel-type conspiracy with "separate spokes meeting at a common center" although "without the rim of the wheel to enclose the spokes." *See Kotteakos v. United States*, 328 U.S. 750, 756, 66 S.Ct. 1239, 1243, 90 L.Ed. 1557 (1945). The defendant-Friedman is the "hub" of the wheel and the defendants Tamko and Southwest are the separate "spokes."

The defendants assert that they are unaware of any authority in which a single trial disposed of such a "wheel" conspiracy in the antitrust context. I am similarly unaware of any such case. However, I am also unaware of any authority, nor have the defendants provided any, in which a court has granted a defendant's motion for separate trials, pursuant to Rule 42(b), due to the prejudice resulting from such a factual situation. *See generally* Annot. *Separate Trials Under Rule 42(b) of Federal Rules of Civil Procedure, of Claims or Issues In Suits Involving Federal Anti-Trust Laws*, 12 A.L. R.Fed. 831.

The cases cited by the plaintiff and the defendants, while involving parallel considerations to the instant case, do not involve "wheel" conspiracies in the antitrust context. In *Kuechle v. Bishop*, 64 F.R.D. 179 (N.D.Ohio 1974), cited by the plaintiff, the court, in a securities fraud case involving a main defendant and two accessories, denied

the accessories' rule 20 motion for improper joinder of claims. The court reasoned that there were similar legal questions as to all of the defendants and that the main instigator, Bishop, was a common factor to all of the defendants. *See also Anderson v. Francis I. Dupont & Co.*, 291 F.Supp. at 711–12.

In *Baker v. Waterman S.S. Co.*, 11 F.R.D. 440 (S.D.N.Y.1951), cited by the defendants, the court, in a personal injury action involving two plaintiffs injured by the same explosion, denied a motion to consolidate already separate cases, pursuant to Rule 42(a) on the ground that the more "gruesome" injuries to one plaintiff might influence the verdict on the other plaintiff. Finally, in *Cohen v. District of Columbia National Bank*, 59 F.R.D. 84 (D.D.C.1972), cited by the defendants, the court in an action involving usury claims against several banks, granted the defendants' Rule 42(b) motion for separate trials. However, in *Cohen*, there was no common factor between the defendant banks and no mention of duplication of evidence in the separate trials.

Taking all of the above considerations into account, I find that given the small number of "spokes" on the wheel and the relative straightforwardness of the issues, as compared with other antitrust cases, that my cautionary measures can ameliorate the potential prejudice to the defendants to the extent that such prejudice is outweighed by considerations of judicial economy.[7]

Accordingly, it is hereby

ORDERED that the defendants' motion for separate trials are denied.

---

**6.** I do not believe that cautionary instructions are a panacea, however. Accordingly, where the danger of prejudice is truly substantial the more prudent course is to order separate trials. *Cf. Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J. concurring) ("The naive assumption that all prejudicial effects can be overcome by instructions to the jury ... all practicing lawyers know to be unmitigated fiction").

**7.** The more "spokes on the wheel" or separate conspiracies with the "hub," the greater the possibility of jury confusion and transference of damaging evidence. Further, the more separate conspiracies, the more difficult it would be to implement adequate precautionary measures.