**STATE OF OHIO, Plaintiff-Appellee,**

v.

**ARTHUR ANDERSEN & CO., Defendant-Appellant.**

**ARTHUR ANDERSEN & CO., Petitioner,**

v.

**Honorable Sherman G. FINESILVER, Respondent.**

**Nos. 77–1571 and 77–1591.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 17, 1977.

Decided Feb. 9, 1978.

Rehearing Denied March 22, 1978.

H. Thomas Coghill, Denver, Colo. (Paul E. Goodspeed and Jay Horowitz of Coghill, Goodspeed & Horowitz, Denver, Colo., and Charles W. Boand of Wilson & McIlvaine, Chicago, Ill., were with him on the brief), for Arthur Andersen & Co., defendant-appellant in No. 77–1571 and petitioner in No. 77–1591.

Miles M. Gersh, Denver, Colo. (Harry L. Hobson, Luke J. Danielson and Holland & Hart, Denver, Colo., were with him on the brief), for plaintiff-appellee in No. 77–1571 and respondent in No. 77–1591.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Defendant-appellant Arthur Andersen & Co. seeks relief from preclusionary and monetary sanctions imposed under Rule 37(b)(2), F.R.Civ.P., for noncompliance with discovery orders. In *Arthur Andersen & Co. v. Finesilver,* 10 Cir., 546 F.2d 338, cert. denied, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543, we upheld the validity of the discovery orders. The basic facts are outlined in that opinion and will not be repeated here. Motions by plaintiff-appellee, the State of Ohio, for imposition of sanctions were held in abeyance pursuant to our stay order. 546 F.2d at 340. After denial of certiorari to review our decision, the district court held a hearing on the imposition of sanctions and entered a comprehensive order finding specific facts. This order is reported as *State of Ohio v. Crofters, Inc.,* D.C.Colo., 75 F.R.D. 12. The facts there found will be discussed here only insofar as is necessary to an understanding of this opinion. The district court said, Ibid. at 24–25:

"It is inescapable that Andersen has followed a willful, deliberate and flagrant scheme of delay and resistance in discovery matters. In light of the opportu-

nities to provide discovery of relevant documents, Andersen's opposition can only be characterized as contumacious and unjustified."

The court ordered, 75 F.R.D. at 25–26, that Andersen reimburse Ohio $59,949 for costs and expenses incurred in securing production and that Andersen was precluded from opposing Ohio's claims on two specified matters.

Our number 77–1571 is Andersen's direct appeal from the order imposing sanctions. No. 77–1591 is its petition for mandamus which attacks the order as usurpation of judicial power. When the matter was first here, Andersen asserted that compliance was not required because it would violate the law of Switzerland. After reference to *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255, we said, 546 F.2d at 341:

"*Societe* implies that consideration of foreign law problems in a discovery context is required in dealing with sanctions to be imposed for disobedience and not in deciding whether the discovery order should issue."

We also said, Ibid. at 342:

"When and if a subsequent order of the court imposes a harmful sanction, that order may then be reviewed."

The district court has now imposed sanctions. It makes no practical difference whether its order be reviewed on direct appeal or by mandamus. Andersen is entitled to a review. We have here "a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546–547, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528. Although the order may be collateral, we are convinced that under *Cohen v. Beneficial Loan Corp.*, it is appealable. Accordingly, No. 77–1591, the petition for mandamus, is dismissed.

The sole issue concerns the validity of the sanctions. The as yet untried case was filed in April, 1972, and was transferred to the District of Colorado on November 17, 1972. See *In re King Resources Company Securities Litigation*, Jud.Pan.Mult.Lit., 352 F.Supp. 975. On the comparatively simple question presented, we are confronted with a record of approximately 3,000 pages plus six large envelopes of material. Briefs of 172 pages, plus appendices, have been filed. The briefs are replete with invectives, maledictions, and denunciations which we ignore. We also ignore Andersen's persistence in disparaging and derogating the trial judge and his actions.

Ohio loaned King Resources Company, KRC, eight million dollars allegedly in reliance on financial statements prepared by Andersen, 546 F.2d at 339–340. Fund of Funds, Ltd., FOF, an important customer of KRC, was a subsidiary of Investors Overseas Services, Ltd., IOS, a Canadian corporation with its principal place of business in Geneva, Switzerland. 75 F.R.D. at 15. Ohio claims that the relationship between KRC and FOF was not noted by Andersen in the KRC financial statements. Andersen denies any liability or wrongdoing. Its knowledge of the KRC–FOF–IOS connection is relevant and important to the lawsuit. 75 F.R.D. at 15.

On October 24, 1975, Ohio served on Andersen a request for production of documents including, as Request No. 26, material relative to Andersen's examination of IOS after January 1, 1967. During a November 7 conference, held pursuant to a local court rule, Andersen objected to discovery from other than its Denver office and raised the "foreign law" issue. The conference was unproductive and Ohio moved to compel response to its requests. On December 16 the court ruled that the requests were meritorious and ordered Andersen to produce the requested documents from its files within the United States. With regard to foreign secrecy laws, the court said:

"* * * if there is going to be any question of foreign secrecy laws, they are going to have to be specified with great particularity and specificity."

On April 15, 1976, Ohio filed another discovery motion related to documents in An-

dersen's Geneva office and concerned with the relationship between KRC and IOS. Andersen's April 30 reply to this request had attached a memorandum of Swiss counsel stating in general terms the requirements of Swiss law. Ohio then obtained, and tendered to Andersen, consents of FOF, and other related companies, to the production of the documents. Andersen filed a memorandum reasserting the Swiss law problem and rejecting the consents.

A May 27 order of the court directed Andersen to comply with the discovery requests. On June 17, Andersen moved for withdrawal of the May 27 order saying that it had been taken by surprise. In support of the motion it said that one of its lawyers was going to Geneva to consult with Swiss counsel:

"to determine what documents and information may be available for examination by Ohio without violating Swiss criminal law, e. g., the opportunity to consult with Swiss counsel as to the legal effect of the consents filed by Ohio and determine what, if any, documents and information sought may legally be provided pursuant to such consents."

Earlier, it had represented to the court that the documents were not producible because of Swiss law and that the consents were inadequate. It is incomprehensible and inexplicable how Andersen could make such representations when it did not know what the documents contained and still had to send a lawyer to Switzerland to get the information. We agree with the statement of the trial court, 75 F.R.D. at 17, that Andersen's conduct

"places in substantial doubt the credibility of both the written opinion of Swiss counsel and Andersen's own insistence that it had 'proceeded in good faith to do the best it can.'"

On June 25 the court denied Andersen's motion to stay the May 27 order and directed counsel to meet and discuss the discovery problems. On June 28 Andersen filed a notice of appeal from the May 27 order. The court modified the order on July 2 and directed Andersen to make "every effort" to produce the documents by July 12. On July 9 Andersen appealed from that order. Ohio then moved for sanctions for noncompliance and Andersen filed in the court of appeals a petition for mandamus relief. At a hearing on July 22, ten days after the deadline set by the court, Andersen finally produced 84 newspaper clippings from its Geneva files and filed a status report saying that 110 additional documents were on their way from Geneva and were expected within the week. The explanation for delay in producing the newspaper clippings is unconvincing. See 75 F.R.D. at 18 n. 4. Andersen explained its failure to produce the 194 concededly producible documents by saying that it had failed to "focus" on the problem of delay, 75 F.R.D. at 18. That failure does not excuse disobedience of the court's order. On July 23, the court entered a protective order and directed that production be had by August 20. Documents trickled in for several months. Some came from sources other than Geneva, and some pursuant to an IOS consent that Ohio had presented to Andersen in May. See 75 F.R.D. at 19. The court said, Ibid., that the "dilatory response to our December 16, 1975 order hardly bespeaks of the good faith compliance which Andersen repeatedly asserts."

The facts in the instant case are distinguishable from those considered in *In re Westinghouse Electric Corporation Uranium Contracts Litigation*, 10 Cir., 563 F.2d 992. In that case Rio Algom was found in contempt for failure to obey a discovery order. It asserted that it could not comply because of Canadian law. In reversing we said that it had acted in good faith and had made a diligent effort to comply. Ibid. at 998. We also noted that the trial court had conducted no balancing of interests as required by *Societe*. Ibid. at 999. In the instant case Andersen acted in bad faith and the balancing was heavily on Ohio's side.

Another opinion relating to the same *Westinghouse* litigation, No. 77–1833, filed January 31, 1978, 570 F.2d 899, involved a protective order relating to the taking of a

deposition. We reversed on the peculiar facts of that case which are in no way comparable with those presented in the instant controversy.

On July 23 we granted a temporary stay of the May 27 and July 2 orders. 546 F.2d at 340. Our opinion upholding those orders was filed on December 1, 1976, and the mandate issued on January 10, 1977. The Supreme Court denied certiorari on February 22, 1977. See 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543. On January 19 Ohio renewed its request for the imposition of sanctions. At an April 15 hearing Andersen conceded that some of the documents ultimately produced after much delay were from sources other than Geneva and said that on the advice of Swiss counsel, it had decided to take the "risk" of violating Swiss law by producing the other requested documents. In its May 23, 1977 order, 75 F.R.D. at 20, the court found that "Andersen deliberately and willfully refused discovery for an unreasonable period of time without justification." The finding has overwhelming support in the record.

■ Andersen argues that the court failed to consider and recognize Swiss law. In its December 16, 1975, order the court referred to "foreign secrecy laws" and said that any questions in that regard should be specified with "particularity and specificity." The specification did not occur for many months. Without the specifics the court had no need to determine Swiss law. Andersen could not supply the specifics because it waited until the latter part of June to have one of its counsel travel to Switzerland to examine the requested documents and "consult with Swiss counsel to determine what documents and information could and could not be made available in view of the applicable Swiss secrecy laws." After the consultation, documents began to come in slowly. At the April 15, 1977 hearing, Andersen in effect withdrew its reliance on Swiss law. No occasion ever arose for the court to decide a specific point of Swiss law. Indeed, the record convinces us that Andersen's claims with reference to Swiss law were no more than diversionary tactics.

■ In opposing the sanctions, Andersen emphasizes that it finally produced the documents. Final production is not determinative. The Rule permits a sanction when a party "fails to obey an order." Andersen refused willfully to obey for an unreasonable time on the contrived excuse, eventually abandoned, of the Swiss secrecy laws. The ultimate, and reluctant, production of documents, more than a year after a legitimate request, does not absolve Andersen of the charge that it willfully failed to obey a valid court order.

■ Rule 37(b)(2), F.R.Civ.P., provides in pertinent part:

> "If a party * * * fails to obey an order to provide or permit discovery * * * the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

> \* \* \* \* \* \*

> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence."

The court ordered that Andersen "shall not oppose or introduce any evidence opposing" Ohio's claims that (1) on and before April 10, 1970 Andersen had information relating to the financial condition and liquidity of FOF which should have led it to realize that FOF "would imminently cease to purchase natural resource interests from KRC," and (2) that on and before April 24, 1970, Andersen knew that KRC was committed "to provide financing to IOS and was negotiating an agreement to give KRC control of the operation of IOS." 75 F.R.D. at 25–26.

Andersen argues that the use of preclusionary sanctions is premised on the presumption that the information withheld would have supported its opponent's case and that the presumption is not applicable here because of final production. The presumption rationale is explained in *Hammond Packing Co. v. Arkansas*, 212 U.S.

322, 350–351, 29 S.Ct. 370, 53 L.Ed. 530, which upheld a default judgment entered after disobedience of a discovery order. The Advisory Committee's Note to Rule 37, 28 U.S.C.A. Rule 37, p. 225, says that the Rule accords with *Hammond.*

In *Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255, the Court disapproved the sanction of dismissal for noncompliance with a discovery order. In so doing it distinguished between inability to comply and willful or bad faith noncompliance. Ibid. at 212, 78 S.Ct. 1087. In *Norman v. Young,* 10 Cir., 422 F.2d 470, we discussed both *Hammond* and *Societe* and upheld the sanction of dismissal, noting, Ibid. at 474, that the disobedience was "wilful" and "a direct flaunting of the Court's authority." The instant case presents a similar situation.

In *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747, the Court, in upholding the sanction of dismissal for disobedience of a discovery order, discussed Rule 37(b)(2). It held that the trial court did not abuse its discretion in ordering dismissal because of a party's "flagrant bad faith" and its counsel's "callous disregard" of their responsibilities. Ibid. at 643, 96 S.Ct. 2778. The Court emphasized that sanctions must be available "in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Ibid. In the circumstances presented, the preclusionary sanctions were just and authorized by the Rule.

In addition to the preclusionary sanctions, the court ordered Andersen to pay Ohio "$59,949 as a reasonable reimbursement for costs and expenses." 75 F.R.D. at 25. Rule 37(b)(2), F.R.Civ.P., lists several sanctions which may be imposed for failure to comply with a discovery order and concludes with this provision:

> "In lieu of any of the foregoing orders [for sanctions] or in addition thereto, the court shall require the party failing to obey the order or the attorney advising

him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

■ Ohio filed a statement of its expenses, the details of which are not attacked by Andersen. The breakdown of these expenses shows, 75 F.R.D. at 22 n. 8:

Incurred to July 23, 1976 _____$16,460

Incurred in connection with
Tenth Circuit proceedings _____ 27,997

Incurred in connection with
Supreme Court proceedings _____ <u>15,492</u>

TOTAL $59,549

Andersen argues that the expenses for the period before July 23 should not be awarded because the delay did not prejudice Ohio and because during that period Andersen did not fail to obey a court order. In October, 1975, Ohio moved for production. Many conferences and hearings were held to resolve the dispute over production. On May 27, 1976, the court entered its order compelling production. Rule 37(a)(4) provides that if a motion to compel discovery is granted,

> "The court shall * * * require the party * * * whose conduct necessitated the motion * * * to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust."

This provision for the payment of reasonable expenses to secure an order compelling production applies. The record facts justify the award.

■ Andersen's next objection goes to the appellate expenses. It says that the award conflicts with Rule 38, F.R.A.P., pertaining to the award by the court of appeals of damages and costs resulting from frivolous appeals. There is no conflict. Rule 37(b) permits the district court to award

**1376**

reasonable expenses and attorneys' fees for disobedience of a discovery order. Andersen unsuccessfully attacked the discovery orders both in the court of appeals and the Supreme Court. Its argument that the court of appeals recognized the seriousness of the problem of the Swiss secrecy laws does not impress us. Conflicts arising from the interaction of domestic law relating to discovery and foreign secrecy laws are important and troublesome. When the case was here before, we did not know that Andersen had waited until the end of June, 1976, to investigate the Swiss documents to determine the applicability of the Swiss laws and the adequacy of the consents which Ohio had provided. We rejected Andersen's general reliance on Swiss law and now learn that we should have awaited the specifics.

To secure production, Ohio had to oppose Andersen in both the court of appeals and the Supreme Court. The award of the appellate expenses and attorneys' fees was just and proper under Rule 37(b)(2).

■ The record before us shows both flagrant bad faith and callous disregard. Rule 1, F.R.Civ.P., provides that the Rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." The trial courts must administer the rules to attain the proclaimed objective. See *Robison v. Transamerica Insurance Co.*, 10 Cir., 368 F.2d 37, 39. Enforcement of the rules requires sanctions for disobedience of valid court orders. The trial court did not abuse its discretion when it imposed the sanctions.

In No. 77–1571, the orders of the district court are affirmed. No. 77–1591 is dismissed.