**In the Matter of an Application to Enforce Administrative Subpoena of the**

**BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, Applicant,**

v.

**INTERFINANCIAL SERVICES, LTD. an indirect subsidiary of Grupo Financiero Interacciones, S.A. c/o Abe Wilson Laredo National Bancshares, Inc. 600 San Bernardo Ave. Laredo, TX 78042 Respondent.**

**Misc. No. 00–75 (RCL).**

United States District Court, District of Columbia.

June 20, 2000.

J. Virgil Mattingly, Jr., Richard Ashton, Stephen H. Meyer, Bradford S. Fleetwood, Board of Governors of the Federal Reserve System, Washington, DC, for Petitioner.

Richard W. Beckler, John C. Letteri, Fulbright & Jaworski L.L.P., Washington, DC, for Respondent.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court upon a petition by the Board of Governors of the Federal Reserve System (the "Board") for an order requiring Interfinancial Services, Ltd. ("Interfinancial") to show cause why it should not be required to comply with a subpoena *duces tecum* issued by an Administrative Judge in connection with a pending Board enforcement proceeding. Additionally, the Board requests an order compelling Interfinancial to produce all documents named in the subpoena within seven days of the Order's issuance. For the following reasons, the Board's petition shall be granted and the subpoena shall be enforced.

## I. FACTS

Laredo National Bancshares ("LNB") is a registered bank holding company under the Bank Holding Company Act ("BHC Act"), 12 U.S.C. § 1841 *et seq.* In July 1991, Carlos Hank Rhon purchased a controlling interest in LNB. Under the Change in Bank Control Act, 12 U.S.C. § 1817, Rhon filed a Notice of Change in Bank Control, which the Board ultimately approved in December 1991 after securing various commitments from Rhon. One of these commitments required Rhon to seek Board approval prior to assuming control over more than 25% of LNB's stock.

In October 1993, Incus Co. Ltd. ("Incus"), a bank holding company controlled by Rhon, sought to obtain a large block of LNB's outstanding voting shares. On October 13, 1993, pursuant to Rhon's December 1991 commitment, Rhon and Incus filed another Notice of Change in Bank Control. Relying on certain representations from Rhon, the Board approved the Notice in January 1994.

On December 16, 1997, the Board issued a Notice of Charges alleging that Rhon and Incus had reneged on prior commitments to the Board and were guilty of violating the BHC Act, the Change in Bank Control Act, and other federal laws. Under the Board's Rules of Practice, 12 C.F.R. § 263.26, the matter was assigned to Administrative Law Judge Arthur L. Shipe. After Rhon and Incus requested a full hearing, the Board's Enforcement Counsel ("EC") requested that Judge Shipe issue a subpoena *duces tecum* to Interfinancial Services, Ltd. ("Interfinancial"), a subsidiary of a Mexican brokerage firm controlled by Rhon and incorporated under the laws of the British Virgin Islands.

On October 6, 1999, Interfinancial moved to quash the subpoena *duces tecum*, contending that the documents named in the subpoena were irrelevant to the pending inquiry and that compliance with the subpoena would violate Mexican financial privacy laws. Judge Shipe rejected these arguments and denied the motion to quash on December 8, 1999. Subsequently, counsel for Interfinancial agreed to produce the requested documents. However, as of February 4, 2000, Interfinancial had yet to fully comply with the subpoena.

The Board applied for an Order to Show Cause on February 9, 2000. On March 8, 2000, this court issued the requested Order to Show Cause, and a hearing was held on March 17, 2000. This court today grants the Board's motion and requires respondent to fully comply with the subpoena *duces tecum*.

## II. DISCUSSION

### A. Issues Presented

Interfinancial argues that this court should not enforce the subpoena for three

reasons. First, respondent contends that it cannot release the subpoenaed documents without violating Mexican privacy laws. Second, Interfinancial claims that this court lacks jurisdiction to enforce the Board's subpoena. Finally, respondent argues that the scope of the subpoena is too broad and constitutes a "fishing expedition."

### 1. Mexican Privacy Law

■ Respondent asserts that the subpoena *duces tecum* requires Interfinancial to release sensitive account and transaction information in violation of Mexican law. To support its position, respondent submitted an opinion from a Mexican law firm citing the "Secrecy in the Securities Market" principle codified in Article 25 of the Mexican Securities Market Act: "Brokerage Houses cannot give information on the transactions they undertake or those in which they participate, except for information requested by the client...or his legal representatives."

This court finds that the Securities Secrecy principle does not preclude the release of the subpoenaed documents. Article 8 of the Mexican Securities Market Act states that "[t]he Ministry of Finance and Public Credit shall be the competent organization to interpret the provisions of this Law, and, through general rules, to provide everything with respect to its application." Availing themselves of this discretion, on September 7, 1999 the Undersecretary of Finance and Public Credit of Mexico issued the following ruling: "Mexican securities brokerage firms...should carry out their operations subject to the foreign legislation applicable to them... International Services, Ltd. is not subject to the legal regime set forth in Article 25 of the Securities Market Law, nor are its operations a subject matter of such law." *See* exhibits A–B to Enforcement Counsel's Opposition to Motion to Quash, Attachment E. The Administrative Judge determined that the decree issued by the Undersecretary conclusively demonstrates that Mexico's privacy laws are inapplicable to Interfinancial. After reviewing the materials subsequently filed by both parties, this court finds no reason to reverse Judge Shipe's ruling.

■ Even if this court were hesitant to accord dispositive weight to the Undersecretary's decree, petitioner correctly observes that Interfinancial has failed to meet the evidentiary requirements for nullifying an administrative subpoena. As the Circuit Court of Appeals noted in *Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370, 1374 (10th Cir.1978), *cert. denied*, 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978), a party who relies on foreign law assumes the burden of showing that such law prevents compliance. The legal opinion of one Mexican law firm and the accompanying rhetoric provided by counsel for respondent is insufficient to meet this burden, particularly in light of the ruling by the Undersecretary obtained by the Board. Interfinancial has had ample opportunity to provide contradicting authority from sources inside the Mexican government or the Mexican judiciary. Their failure to do so reinforces the validity of the Undersecretary's ruling.

Furthermore, as the petitioner observes in its Application for an Order to Show Cause, the issuance of a subpoena *duces tecum* "imposes an obligation to use all good faith efforts to obtain permission from the [foreign] government for release of the documents." *Civil Aeronautics Board v. Deutsche Lufthansa Aktiengesellschaft*, 591 F.2d 951, 952 (D.C.Cir. 1979). Despite a ruling from the Ministry of Finance and Public Credit immunizing Interfinancial against any potential sanctions, respondent continues to resist full compliance with the subpoena. In light of these circumstances, respondent cannot credibly claim that Mexican privacy law forbids the production of the subpoenaed documents.

## 2. Jurisdiction

■ The second argument advanced by respondent is that this court lacks the jurisdiction to enforce the Administrative Judge's subpoena. Specifically, respondent contends that 1) Interfinancial has no authority to produce private account information without the consent of their clients, and 2) since this court lacks personal jurisdiction over the clients whose account information was subpoenaed, this court should dismiss the Board's application to enforce the subpoena. Each of these arguments relies on the underlying assumption that Interfinancial's clients exercise absolute control over their account information notwithstanding the fact that the records are in Interfinancial's possession. However, the portion of the Mexican Securities Market Act cited by respondent in its Motion to Quash indicates that brokerage houses are obliged to turn over account information to government authorities under a variety of circumstances regardless of their client's wishes. Mexican law thus endows brokerage houses with both rights and responsibilities pertaining to the account records of their clients. Therefore, Interfinancial's contention that they are powerless to release account records without the prior consent of its clients is without merit. Consequently, in the absence of any conflict with Mexican privacy law, this court need only establish personal jurisdiction over Interfinancial and not the clients themselves.

Significantly, neither party disputes this court's exercise of personal jurisdiction over Interfinancial. Respondent concedes that Carlos Hank Rhon and of all of his affiliated companies, including Interfinancial, volunteered to submit to the jurisdiction of United States federal courts in return for the Board's approval of Rhon's acquisition of LNB. In fact, Rhon specifically agreed that his companies would not contest jurisdiction in actions involving subpoenas. *See* Exhibit 1, Response in Opposition to the Application for an Order to Show Cause.

## 3. Relevancy

■ Finally, respondent urges this court not to enforce the subpoena duces tecum because the documents requested by the Board are irrelevant and "speculative." In rebuttal, the Board states in its Application for an Order to Show Cause that the documents subpoenaed from Interfinancial are expected to shed light on two particular allegations: 1) that David Penaloza Sandoval secretly acquired an equity interest in Incus in violation of a prior commitment that Carlos Hank Rhon made to the Board, and 2) that Rhon sold $20 million worth of Incus to his father without the Board's required approval.

Petitioner concedes that it does not intend to use every transaction as evidence in the main hearing, but asserts that a number of the subpoenaed transactions will provide evidence to support its allegations. Contrary to the view expressed by respondent, this admission of the Board does not undermine the legitimacy of the subpoena. The Board is seeking to prove that there were illegal transfers of LNB stock from Carlos Hank Rhon to David Penaloza Sandoval and Rhon's father. The exchanges of the type the Board is alleging are easily negotiable through a single large transfer or a series of smaller transactions. Since such financial transfers by their nature defy facial recognition of purpose, it would be unreasonable to expect the Board to target the critical transactions *a priori* without first examining the larger group of transfers in which LNB stock might potentially have moved between the aforementioned parties. In light of these circumstances, this court is satisfied that the Board tailored its document request narrowly to conform to the allegations, and that the subpoena *duces tecum* approved by Judge Shipe does not constitute a "fishing expedition."

## III. Conclusion

This court finds that 1) Mexican privacy law does not preclude Interfinancial from producing the subpoenaed documents, 2) this court's personal jurisdiction over Interfinancial enables the court to enforce the subpoena issued by the Administrative Judge, and 3) the documents named in the subpoena *duces tecum* are pertinent to the Board's allegations and do not constitute a "fishing expedition." Accordingly, the court orders respondent to fully comply with the subpoena *duces tecum*.

A separate order shall issue this date.

## ORDER REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENA DUCES TECUM

Applicant, Board of Governors of the Federal Reserve System, has filed an Application for an Order to Show Cause and Order Requiring Compliance with Administrative Subpoena *duces tecum* accompanied by a proposed Order, a Memorandum of Points and Authorities, and other documents and papers in support thereof. The Court having considered the Application and supporting papers, and responses filed, and the arguments of the parties finds for the reasons states in an accompanying memorandum opinion that the information sought by the Board in the subpoena to Interfinancial Services is relevant to the Board's proceeding, and Mexican financial privacy laws do not excuse compliance.. Therefore, it is hereby:

ORDERED, that respondent Interfinancial Services, Ltd. shall produce to the Board the documents set forth in the September 21, 1999, subpoena issued to it by Administrative Law Judge Arthur L. Shipe no later than seven days from the date of this Order; and

IT IS FURTHER ORDERED, that the Court shall retain jurisdiction to enforce the terms of this Order.

## *ORDER*

Upon consideration of petitioner's motion [8] to file a reply, and respondent's motion [9] to file a response to the reply, both motions are granted. All lodged materials have been considered in connection with the court's decision this date to grant the petition.

SO ORDERED.