IN THE SUPREME COURT OF THE STATE OF MONTANA

No.  97-214

_____

| | |
|---|---|
| MALTA PUBLIC SCHOOL DISTRICT A AND 14, | ) ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) |
| | ) |
| THE MONTANA SEVENTEENTH JUDICIAL DISTRICT COURT, PHILLIPS COUNTY, MONTANA, JUDGE JOHN WARNER, PRESIDING, | ) ) ) ) |
| | ) |
| Respondent. | ) |

O P I N I O N
A N D
O R D E R

_____

The Malta Public School District A and 14 (School District), by counsel, has filed
its application requesting that this Court issue a writ of supervisory control and order in
the underlying case entitled Malta Public School District A and 14, Plaintiff  v. United
States Fidelity & Guaranty Company, a Maryland corporation, and the Phillips County
Insurance, Defendant, Cause No. DV-96-049, requiring the District Court to impanel one
jury to hear both portions of the bifurcated case without any delay between trial of the
bifurcated parts.  The School District's request for this Court's intervention results from
the District Court's April 15, 1997 Order denying the School District's motion to impanel
one jury to hear both bifurcated claims, without delay between trial of each claim.

PROCEDURAL BACKGROUND

On December 24, 1995, fire damaged the Junior and Senior High School in Malta,
Montana.  Having purchased an insurance policy from United States Fidelity & Guaranty
Company (USF&G) covering real and personal property, including the Malta Junior and
Senior High School, the School District contacted USF&G to receive payment under the
policy to finance rebuilding the school.  The parties disputed the amounts available under
the insurance policy and consequently, in May 1996, the School District filed suit against
USF&G alleging breach of insurance contract.

On March 14, 1997, the District Court heard oral argument regarding numerous
motions raised by the parties.  After the hearing, the District Court ruled on these

motions in its March 24, 1997 Order. Specifically, the District Court granted the School
District leave to file an amended complaint raising a claim under the Montana Unfair
Trade Practices Act, 33-18-242, MCA. Additionally, pursuant to USF&G's motion,
the District Court bifurcated the breach of contract and bad faith claims. On April 15,
1997, the District Court denied the School District's motion to try the bifurcated case
before the same jury and to begin the bad faith trial immediately after the breach of
contract trial. In response to the April 15, 1997 Order, the School District filed this
application for writ of supervisory control.

DISCUSSION

The School District argues that this Court should accept jurisdiction over this
application for writ of supervisory control. The School District contends that supervisory
control is necessary in this case because the District Court's April 15, 1997 Order
"constitutes such a mistake of law so as to cause gross injustice to the Malta School
District such that there is no remedy or appeal or relief that can be obtained or granted.
. .." USF&G responds that the School District's application for writ of supervisory
control should be denied. USF&G argues that the District Court, in its April 15, 1997
Order, did not make a mistake of law, but rather properly exercised its broad discretion
to order that the bifurcated claims be tried at separate times to separate juries.

In Plumb v. Fourth Jud. Dist. Court (Mont. 1996), 927 P.2d 1011, 53 St.Rep.
1187, we clarified the standard for our exercising supervisory control under Article VII,
Section 2(2), of the Montana Constitution and under Rule 17, M.R.App.P. Citing State
ex rel. Whiteside v. Dist. Court (1900), 24 Mont. 539, 63 P. 395, we stated that, without
trying to define its particular functions, supervisory control enables this Court "to control
the course of litigation in the inferior courts where those courts are proceeding within
their jurisdiction, but by a mistake of law, or willful disregard of it, are doing a gross
injustice, and there is no appeal, or the remedy by appeal is inadequate." Plumb, 927
P.2d at 1014.

Having reviewed the relevant portions of the record and the briefs submitted in
support of and in opposition to the School District's application, we conclude on the facts
here that the School District has no adequate remedy by appeal from the District Court's
order. Therefore, supervisory control is proper in this case. Accordingly, we accept
jurisdiction to review the substantive issues raised in this case by writ of supervisory

control.

While the School District does not challenge the District Court's March 24, 1997 Order bifurcating the breach of contract and bad faith claims, the School District does argue that the District Court, in its April 15, 1997 Order, abused its discretion by denying the School District's motion to try both bifurcated claims before the same jury and to begin the bad faith trial immediately after the breach of contract trial. Specifically, the School District argues that by impaneling two separate juries and planning to allow approximately sixty days to lapse between the trial of both claims, the District Court has "severely prejudiced" the School District by denying the School District "a speedy remedy, tantamount to a denial of justice." Furthermore, the School District contends that there is no adequate remedy by appeal from having to try this case twice.

Relying on Martin v. Bell Helicopter Co. (1980), 85 F.R.D. 654, the School District asserts that the breach of contract and bad faith claims are "inextricably intertwined and related factual matters" and should not be separated for consideration by two different juries. Furthermore, the School District contends that "putting the Malta School District through two lengthy trials, with the same witnesses, to two totally separate jury panels, would do great violence to judicial economy, would be totally unfair and prejudicial to the Malta School District, would confuse rather than clarify the issues, and great inconvenience would accrue to Malta Schools. . .." Rather, the School District suggests that if both issues were tried before one jury, the bad faith claim would only require one to two days to complete, if immediately tried after the conclusion of the breach of contract claim, and would thereby avoid any unfairness or prejudice to the School District.

USF&G responds that the School District's argument that separate trials before separate juries will be non-economical and inconvenient is unpersuasive. Rather, USF&G argues that interests involving economy and convenience "must yield to the right to a fair and impartial trial to all litigants." USF&G contends that to require an immediate second trial before the same jury defeats the bifurcation objective to eliminate any prejudice to USF&G. Accordingly, USF&G asserts that the District Court did not abuse its discretion by ordering that each claim be tried at separate times to separate juries. Consequently, USF&G argues that this Court should deny the School District's application for writ of supervisory control.

In its March 24, 1997 Order, the District Court granted the School District's motion to amend its complaint to raise a claim under the Montana Unfair Trade

Practices
Act and also granted USF&G's motion to bifurcate this bad faith claim from the
original
breach of contract claim as authorized by 33-18-242, MCA. Subsequently, in its
April
15, 1997 Order, the District Court denied the School District's motion to try both
bifurcated claims before the same jury and to begin the bad faith trial immediately
after
the breach of contract trial. Section 33-18-242, MCA states in pertinent part:

(1) An insured or a third-party claimant has an independent cause
of action against an insurer for actual damages caused by the insurer's
violation of subsection (1), (4), (5), (6), (9), or (13) of 33-18-201
[prohibiting unfair claim settlement practices].
. . ..

(6)(a)An insured may file an action under this section, together with
any other cause of action the insured has against the insurer. Actions may
be bifurcated for trial where justice so requires.

While 33-18-242(6)(a), MCA, authorizes bifurcation of actions for trial, it
provides no
guidance as to when bifurcation is proper, nor does the statute address the issue
here--i.e.
if the actions are bifurcated, should or may the cases be tried to different juries.
Consequently, we look to Rule 42(b), M.R.Civ.P., for guidance. See Britton v.
Farmers Ins. Group (1986), 221 Mont. 67, 721 P.2d 303. Rule 42(b), M.R.Civ.P.,
provides:

The court in furtherance of convenience or to avoid prejudice may order a
separate trial of any claim, cross-claim, counterclaim, or third-party claim,
or of any separate issue or of any number of claims, cross-claims,
counterclaims, third-party claims, or issues.
Under Rule 42(b), M.R.Civ.P., the decision as to whether to bifurcate a trial
is
a matter left to the "broad discretion" of the district court. State ex rel.
McGinnis v.
Dist. Court (Mont. 1983), 673 P.2d 1207, 1208. In State ex rel. Fitzgerald v. Dist.
Court of Eighth Jud. Dist. (1985), 217 Mont. 106, 703 P.2d 148, we explained that
Rule
42(b), M.R.Civ.P., is worded differently than Rule 42(b), Fed.R.Civ.P., because the
federal rule includes additional grounds for granting a separate trial and includes a
provision for the inviolate right of trial by jury. Fitzgerald, 703 P.2d at 155.
However,
we held that despite the lack of a provision for the right of trial by jury in
Montana's
rule, "there should be no difference in result under the Montana rule when an order
for
separate trial is considered [because] Art. II, Section 26, 1972 Montana Constitution
provides that 'the right of trial by jury is secured to all and shall remain
inviolate.'"
Fitzgerald, 703 P.2d at 155.
While we have previously addressed the issue of presenting for decision
bifurcated
issues to one jury seriatim, we have not considered the issue of presenting for

decision
bifurcated issues to separate juries.  See Fitzgerald, 703 P.2d 148; Britton, 721 P.2d 303.
Consequently, we conclude that it is appropriate that we adopt the rule set forth in Martin
concerning bifurcation of issues under one case and presentation of those issues to separate juries:

> A decision whether to use the same or separate juries must be made, therefore, on an individual case basis.  It must be considered whether the issues are intertwined or are distinct; then (if distinct), the interests of judicial economy, fairness to the parties, clarity of the issues, and convenience must also be weighed.

Martin, 85 F.R.D. at 659-60.  Under this analysis, the first factor to be considered is
whether the issues in a case are intertwined or distinct.  If the issues are intertwined,
bifurcation of those issues under Rule 42(b), M.R.Civ.P., whether for decision by one jury seriatim or by separate juries, would result in extended and needless litigation, and,
therefore, would constitute an abuse of discretion by the district court.  See Fitzgerald,
703 P.2d at 156; Martin, 85 F.R.D. at 659-60.  Consequently, only if the issues are distinct is bifurcation proper under Rule 42(b), M.R.Civ.P.  See Fitzgerald, 703 P.2d at
156.  However, to next determine whether presentation of the bifurcated issues to separate juries is proper, the second set of factors set forth in Martin must be weighed--
i.e., the interests of judicial economy, fairness to the parties, clarity of the issues, and
convenience.  See Martin, 85 F.R.D. at 659-60.
        Here, it is conceded that bifurcation of the breach of contract and bad faith claims
is appropriate.  Therefore, we will not address the issue of whether the issues are intertwined or distinct.  However, the issue remains whether the District Court abused
its discretion by ordering that each bifurcated claim be tried before a separate jury.  As
discussed above, we must weigh certain factors--the interests of judicial economy, fairness to the parties, clarity of the issues, and convenience--to resolve this issue.  See
Martin, 85 F.R.D. at 659-60.  The School District points out that if one jury hears both
bifurcated claims, the bad faith claim should only take one to two days to finish if immediately tried after the conclusion of the breach of contract claim.  In contrast, the
School District suggests that to try the bad faith claim to a separate jury would require
a much longer period of time because the second jury must be educated on the underlying
contract claim to understand the bad faith claim.  In other words, the parties would have
to relitigate the entire case with virtually the same evidence and with virtually

the same witnesses who would be put to the inconvenience and hardship of a second trial.

Based upon the particular circumstances of this case, we conclude that the District Court abused its discretion by denying the School District's motion for the District Court to impanel one jury to hear both portions of the bifurcated case without any delay between trial of the bifurcated parts. Upon consideration of the second set of factors under Martin, we conclude that none of the factors support a decision requiring two separate juries. As the School District points out, only by trying the bad faith claim immediately after the breach of contract claim to the same jury will the parties avoid relitigating the entire matter. Such a result would further the interests of judicial economy, ensure fairness to the parties, maintain clarity of the issues and provide convenience to both the court and the parties.

The Dissent concludes that supervisory control is not proper in this case because the first part of the Plumb two-part test for exercising supervisory control is not met. While we agree with the Dissent that the question before us involves a discretionary ruling rather than a "mistake of law," we disagree that this ruling will not result in a gross injustice. In Plumb, after concluding that the district court was proceeding based on a mistake of law by allowing the Defendant to blame an unnamed third party for the Plaintiff's injuries, we concentrated on the inadequacy of any remedy by appeal to explain our exercise of supervisory control. We explained that supervisory control was proper because the district court's mistake would cause a gross injustice to occur:

> [T]he course of discovery will be affected, the cost of preparation and trial will be affected, settlement by the parties will be rendered more difficult, and the value of any verdict will be questionable, meaning additional time and expense for a resolution of the issue by appeal and the inevitable subsequent litigation. Therefore, we conclude that any remedy available to the Plumbs by appeal is inadequate, and that the denial of a speedy remedy by supervisory control would be a denial of justice.

Similarly here, the District Court's discretionary ruling denying the School District's motion to try both bifurcated claims to one jury seriatim will result in a gross injustice which cannot be remedied on appeal. That is, by requiring that the bifurcated claims be tried to separate juries at separate times, the District Court is denying the School District a speedy remedy. Plainly, this Court's refusal to exercise supervisory control would force the School District to appeal this issue after trial of both bifurcated claims--i.e. after prejudice to the School District has occurred and for which no

adequate remedy by appeal exists.  Consequently, we consider supervisory control proper in this case.

Additionally, we disagree with the Dissent's assertions that by accepting supervisory control over discretionary rulings, such as the one at issue, "we simply invite a flood of applications for supervisory control over purely discretionary decisions by trial courts."  We have previously exercised supervisory control over cases involving discretionary rulings, such as those discretionary rulings pertaining to discovery issues. See e.g., Burlington Northern v. Dist. Court (1989), 239 Mont. 207, 779 P.2d 885; Kuiper v. Dist. Court (1981), 193 Mont. 452, 632 P.2d 694 (Kuiper I); Jaap v. Dist. Court (1981), 191 Mont. 319, 623 P.2d 1389.  Our exercise of supervisory control over this case, as well as previous cases involving discretionary rulings, in no way obligates us to accept jurisdiction over all cases involving discretionary rulings.  Rather, "[i]n matters involving supervisory control, this Court has followed the practice of proceeding on a case-by-case basis though we are careful not to substitute the power of supervisory control for an appeal.  Plumb, 927 P.2d at 1015 (quoting State ex rel. Deere & Co. v. Dist. Court (1986), 224 Mont. 384, 399, 730 P.2d 396, 406).

Furthermore, despite the Dissent's assertions to the contrary, our conclusion that the District Court abused its discretion by denying the School District's motion to try both bifurcated claims before the same jury is based upon our consideration of the totality of the Martin standard.  As stated in Martin:

> While economy and convenience may properly be considered in the decision to bifurcate, neither is the ultimate objective.  "A paramount consideration at all times in the administration of justice is a fair and impartial trial to all litigants.  Considerations of economy of time, money and convenience of witnesses must yield thereto."

Martin, 85 F.R.D. at 658.  As the Dissent points out, the District Court decided to try the bifurcated claims at separate times to separate juries based on its "sensitivity to the potential prejudice faced by the Defendants in trying both components of the case to the same jury. [Emphasis added.]"  Yet, the District Court failed to further articulate what prejudice USF&G potentially faces.  Rather, in an effort to avoid any potential prejudice against USF&G, the District Court instead created actual prejudice against the School District and thereby abused its discretion.

That is, as discussed previously, to try the bad faith claim to a separate jury would necessarily require educating the second jury about the underlying breach of contract

claim.  To do this, the School District must relitigate and USF&G must again defend the

entire case using essentially the same witnesses and the same evidence.  Effectively, the

District Court's decision prejudices both parties.  Consequently, only by trying the bad

faith claim immediately after the breach of contract claim to the same jury will the parties

avoid relitigating the entire case.  Furthermore, because the breach of contract and bad

faith claims remain bifurcated, USF&G will continue to enjoy protection from any

potential prejudice associated with the bad faith claim.  Only this course of action will

further the interests of judicial economy, ensure fairness to the parties, maintain clarity

of the issues and provide convenience to both the court and the parties.  And, only this

course of action will insure a "fair and impartial trial to all litigants."

Accordingly, in the underlying case, Malta Public School District A and 14, Plaintiff  v. United States Fidelity & Guaranty Company, a Maryland corporation, and the Phillips County Insurance, Defendant, Cause No. DV-96-049, the District Court shall

impanel one jury to hear both bifurcated claims seriatim.  The trial of the breach of contract claim shall commence as scheduled and the trial of the bad faith claim shall follow immediately thereafter.

DATED this 2nd day of June, 1997.

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER
/S/  W. WILLIAM LEAPHART
/S/  WILLIAM E. HUNT, SR.


Justice Karla M. Gray dissenting.


I respectfully dissent from the Court's opinion and order.  It is my view that, in

accepting supervisory control over the District Court, we are departing from the standard

for supervisory control we so recently clarified in Plumb and inappropriately intruding

into the District Court's decisions regarding trial administration, decisions best left to the

court nearest to--and most familiar with--the case.  In addition, even assuming the propriety of supervisory control here, I would conclude that the District Court did not

abuse its discretion in denying the School District's motion to try the breach of

contract and UTPA claims to the same jury seriatim.

As the Court observes, the Plumb standard for supervisory control allows us to step into matters at the trial level where trial courts "by a mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate." This is clearly a two-part test, requiring that a gross injustice be occurring via a legal mistake or disregard of the law and that there is no--or only an inadequate--remedy by appeal. In my opinion, the question before us does not involve a "mistake of law;" indeed, the Court concedes as much. Nor, in my view, is there a resulting gross injustice. Therefore, the first part of the Plumb test for exercising supervisory control is not met.

No one suggests that the District Court's decision at issue here is a purely legal question or that the District Court disregarded the law in making its decision to have the case tried to two separate juries. Rather, it is clear that this is a decision within the trial court's broad discretion in controlling matters relating to trial administration. Since discretionary trial court rulings encompass " 'the power of choice among several courses of action, each of which is considered permissible' " (Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603-04), it is my view that discretionary rulings do not properly come within the Plumb standard.

In addition, even if an abuse of discretion constituted a "mistake of law" of the type envisioned in Plumb, it is simply not the case that every abuse of discretion results in a "gross injustice" requiring immediate review by this Court. It is my view that, in accepting such matters on supervisory control, we are unnecessarily intruding into the trial courts' domain. Furthermore, in doing so, we simply invite a flood of applications for supervisory control over purely discretionary decisions by trial courts. In fairness to the litigants who are before us in ever-increasing numbers of appeals, and to our ability to manage that appellate caseload well from both timeliness and quality perspectives, we can ill afford to exponentially expand the number of original jurisdiction proceedings requiring our attention.

Moreover, while I do not disagree with the Martin standard, it is my view that, in applying that standard, the Court does not establish an abuse of the District Court's

discretion, but merely substitutes its own discretion for that of the District Court. Martin is clear that considerations of economy of time and convenience of witnesses must yield to the " 'paramount consideration . . . [of] a fair and impartial trial to all litigants.' " Martin, 85 F.R.D. at 658. In this regard, the District Court assessed both partiesþ interests and premised its order denying the School District's motion to try both the breach of contract and UTPA actions to the same jury specifically on its "sensitivity to the potential prejudice faced by the Defendants in trying both components of the case to the same jury." In other words, the District Court weighed the potential for prejudice to the substance of the defendantþs case against the inconvenience to the School District and exercised its discretion in favor of the defendant. This Court converts the School Districtþs mere inconvenience into actual prejudice and weighs it more heavily than the defendantþs potential substantive prejudice. The Court then determines that the District Court--the court most familiar with the case--abused its discretion merely because trying the UTPA claim to a different jury would take more time and inconvenience witnesses for the School District. I cannot agree.

In addition, the record reflects that the breach of contract case is scheduled for trial this month and that the UTPA claim, only amended into the School District's complaint several months ago, is far from ready for trial. In any event, the District Court's order of April 15, 1997, makes it clear that the court's calendar will not accommodate trial of the UTPA claim immediately following the breach of contract claim. Thus, it appears that the Court's conclusion that the trial on the UTPA claim must be to the same jury and must follow immediately after the trial on the breach of contract claim will result in a delay in trying the breach of contract claim. The Court does not address these matters and it escapes me how the School District's interests in resolving its underlying claim and recovering the insurance proceeds for which it bargained--whatever the jury may determine them to be--are advanced by such a result.

In summary, I disagree that this case meets our recently clarified test for accepting a case on supervisory control. That test apparently exists no more. In addition, I disagree that any abuse of discretion has been established under Martin. I would deny the School District's application for a writ of supervisory control.

/S/ KARLA M. GRAY