**Jack Charles BLOXHAM, Plaintiff,**

v.

**MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY, Defendant.**

**No. CV–97–134–GF–RFC.**

United States District Court,
D. Montana,
Great Falls Division.

March 1, 1999.

Channing Hartelius, Hartelius, Ferguson, Baker & Kazda, PC, Great Falls, MT, Patrick R. Watt, Jardine, Stephenson, Blewett & Weaver, PC, Great Falls, MT, for plaintiff.

Randall G. Nelson, Nelson Law Firm, PC, Billings, MT, for defendant.

## ORDER AND MEMORANDUM

CEBULL, United States Magistrate Judge.

Presently pending before this Court are Defendant Mountain West Farm Bureau Mutual Insurance Company's (Mountain West) motion for partial summary judgment and motion to bifurcate. Having considered the parties' arguments in their briefs and at oral argument, the Court is prepared to rule.

## FACTS

The instant case arises out of an incident that occurred on June 19, 1996, at the Meadowlark Country Club in Great Falls, Montana, when Plaintiff Jack Bloxham (Bloxham) drove his pickup truck on the tennis courts at the club, causing over $31,000 worth of damages. As a result of the incident, the State of Montana charged Bloxham with criminal mischief. Bloxham submitted a claim for the damages to the tennis courts to Mountain West, with whom he maintained an automobile liability policy. However, Mountain West denied coverage on the basis of the intentionality of Bloxham's actions.[1]

Mountain West based its denial on an article in the Great Falls Tribune that reported the incident, which in turn relied upon the Great Falls Police Department investigation. The newspaper apparently [2] reported that investigating Officer Thatcher recounted that Bloxham "admitted that he lost a bet in golf and drove into and around the [tennis] court knowingly and deliberately. He stated he realized that he was damaging the courts but continued to do so anyway." (See Thatcher Aff. & Order Re: Prob. Cause, June 20, 1996).

Officer Thatcher completed a detailed police report, wherein he recounted that Bloxham "appeared intoxicated from alcohol" based on his slurred speech, staggered walk, bloodshot eyes and the smell of his breath. Officer Thatcher also relayed more details of the golf bet, as well as Bloxham's reaction to the incident itself: "Things just happen," he said, assuring the officer he would simply pay for the damage.

While the police report provides significantly more detail than the affidavit, it is undisputed that Mountain West did not have or see the police report until well into the instant litigation and after it denied coverage. Further, Mountain West did not have a copy of Thatcher's affidavit until its attorney provided it with a copy well into the instant litigation.

Bloxham responded to Mountain West's denial of coverage by filing suit for breach of contract in failing to provide coverage (Count I) and for failing to investigate the incident before denying coverage, with malice and in violation of the Unfair Trade Practices Act (UTPA) (Count II).

Except for his purported statements to Officer Thatcher, Bloxham has consistently denied the intentionality of his acts. At the outset of the litigation, Bloxham claimed his actions were caused by the effects of malathion poisoning caused by

1. The exclusionary clause for intentional acts is found in § III, ¶ 4 of Bloxham's insurance policy.

2. The Court relies on statements of Defendant's counsel made during oral argument, as no copies of the newspaper articles reporting the tennis court incident have been provided to the Court. Counsel advised the Court that the newspaper article gleaned its information from an affidavit signed by investigating Officer Thatcher.

the weed spray Bloxham had applied to his ranch lands. However, it appears the expert medical evidence would not support such a defense, and Bloxham has dropped it. Bloxham now asserts that another medical condition, a transient ischemic attack, caused his behavior on the night of the tennis court incident.

Although he initially pled not guilty to the charges of felony criminal mischief, Bloxham eventually executed an "Agreement for Deferred Prosecution" in which he "agree[d] and admit[ted] that there was probable cause for his arrest for the offense of Criminal Mischief, a Felony ...." Once again, the details of this agreement were known to Mountain West by means of the newspaper reports of the criminal case.

Mountain West has moved for summary judgment on Count II of the Complaint, asserting that it had a reasonable basis to deny coverage for the damages to country club property caused by Bloxham. Alternatively, Mountain West moved to bifurcate the two claims for purposes of trial.

## DISCUSSION

### Standards Governing the Motion for Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue, and for this purpose the evidence, and inferences therefrom, must be viewed in the light most favorable to the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

On considering a motion for summary judgment, the court decides a pure question of law and is not permitted to weigh the evidence or judge the credibility of witnesses. *Id.* Stated differently, "on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried." *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983) (quoting *Heyman v. Commerce & Ind. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)). While summary judgment is improper where sufficient evidence supporting a claimed factual dispute is adduced, so as to require a jury or judge to resolve the parties' differences, the evidence must be "significantly probative" of the disputed fact. *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Mutual Fund Investors v. Putnam Mgt. Co.*, 553 F.2d 620, 624 (9th Cir.1977).

### As a Matter of Law, Did Mountain West Have a Reasonable Basis in Law or Fact to Deny Bloxham's Claim?

Mountain West argues that it is entitled to summary judgment on the issue of whether it had a reasonable basis in law and fact to deny Bloxham's claim. Mountain West argues that the reasonable basis in law was the intentional act exclusion in the policy, and the reasonable basis in fact was Bloxham's admission to Officer Thatcher regarding the intentionality of his acts. Thus, argues Mountain West, it has a complete defense to bad faith liability under the UTPA.

Contrarily, Bloxham argues that Mountain West's basis for denial was not reasonable in law or in fact because the insurer failed to adequately investigate the incident. Mountain West responds by asserting the adequacy of the investigation is irrelevant for purposes of the issue presented by its motion for summary judgment.

Pursuant to the UTPA, an insured has an independent cause of action against an insurer for actual damages caused by an insurer's unfair claim settlement practices, including an insurer's "refus[al] to pay claims without conducting a reasonable investigation based upon all available information." Mont.Code Ann. § 33–18–242(1) (incorporating provisions of § 33–18–201(4)). The insured may also seek exem-

plary damages for an insurer's unreasonable investigation, if the insured proves by clear and convincing evidence that such conduct was done with actual fraud or malice. § 33–18–242(4) (incorporating provisions of Mont.Code Ann. § 27–1–221).

However, under section 33–18–242(5), "An insurer may not be held liable [for an unreasonable investigation] if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." It is important to note that this subsection is independent from the underlying claim: "[A] jury could find violations of the [UTPA] and still determine that an insurer was not liable under the [UTPA] (for actual or punitive damages) on the basis that the insurer had established the 'reasonable basis' defense." *Dees v. American Nat'l Fire Ins. Co.*, 260 Mont. 431, 861 P.2d 141, 153 (Mont.1993) (Gray, J., specially concurring). Stated another way:

> [E]ven if violations and actual fraud or malice are established, an insurer still may assert that it had a reasonable basis for contesting the claim made under the insurance policy. If an insurer can establish such a reasonable basis, it may not be held liable under [the UTPA], at all. In other words, provided an insurer can prove to the satisfaction of the finder of fact that it had a reasonable basis for denying the claim, § 33–18–242(5) provides a complete defense to both actual and punitive damages under the [UTPA].

*Id.* at 154. Of course, an underlying breach of contract or fraud claim might be unaffected by the defense.

Turning to the instant case, Bloxham argues that Mountain West denied coverage without conducting a reasonable investigation based upon all available information, and in so doing, acted with malice.[3] In support, Bloxham details the inadequacies of Mountain West's investigation: Mountain West did not talk to Bloxham, to witnesses of the incident, or to Officer Thatcher, did not review readily available photographs and videotapes, and did not examine Bloxham's vehicle. Bloxham asserts that Mountain West "refused to undertake any reasonable investigation because it might contradict" the version of the story it relied upon. Moreover, Bloxham explains, Thatcher's affidavit merely states Thatcher's interpretation of Bloxham's purported statements, because Thatcher did not record the statements verbatim. Bloxham contends that Mountain West should have independently investigated the incident before concluding that Bloxham acted intentionally.

Mountain West's response is simple: the issue is not whether Mountain West conducted a reasonable investigation; rather, the issue is whether Mountain West had a reasonable basis in law and fact to deny the claim. Therefore, the specifics of Mountain West's investigation is irrelevant to the UTPA claim and thus this motion for summary judgment. Mountain West argues that the reasonable basis defense is not predicated upon a certain quantum of investigation, but rather, a reasonable basis is just that—a reasonable basis. Mountain West cites *Dees v. American Nat'l*, 861 P.2d at 153–54 (Gray, J. specially concurring), for the proposition that if an insurer can show a reasonable basis, it does not have to prove it did not violate the UFTA to avoid liability under the UFTA.

The Court agrees with Mountain West in its framing of the issue. However, the Court finds that the issue must be resolved against Mountain West because, as will be discussed below, Mountain West has not shown, as a matter of law, that it had a reasonable basis.

---

**3.** "A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and: (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff." Mont. Code Ann. § 27–1–221(2).

### Whether Mountain West had a Reasonable Basis to Deny Coverage is a Jury Question

Bloxham argues that whether Mountain West acted reasonably in relying on newspaper reports of the police investigation is a question for the jury. In support of this argument, Bloxham points to *Dean v. Austin Mutual Ins. Co.*, 263 Mont. 386, 869 P.2d 256 (1994), a case in which a couple's home was destroyed by fire. The Deans submitted a claim for the fire damage to their carrier, Austin Mutual. Following a police investigation, arson charges were brought against the Deans. *Id.* at 257. Pending the outcome of the arson trial, the insurer refused to make payments under the policy. *Id.* When the Deans were ultimately acquitted, Austin Mutual paid some, but not all, of the claim.

The Deans filed suit against Austin Mutual in federal court. In deposition, Austin Mutual testified that "the claim was denied initially because criminal charges were brought," even though the carrier "did not have information to indicate that the Deans contributed in any way to burning their house down." *Id.* Notwithstanding, Austin Mutual argued that it had a reasonable basis to deny coverage, and therefore was not liable for violations of the UPTA.

When confronted with the parties' cross-motions for summary judgment, Judge Erickson certified the following question to the Montana Supreme Court: "Whether, as a matter of law, an insurer has a 'reasonable basis in law or in fact' for contesting a claim ... based solely on the fact that the insureds have been charged with felony arson." *Id.* at 258. In a short, undetailed opinion, the supreme court answered: "No; whether the insurer had a 'reasonable basis in law or in fact' is an issue properly presented for determination to the trier of fact." *Id.*

*Dean* is distinguishable from the case at bar—Mountain West did not deny coverage pending the outcome of Bloxham's criminal trial; rather, the decision to deny was finalized, based on Bloxham's purported admissions to Officer Thatcher as reported in the Tribune. Mountain West distinguishes *Dean* by focusing on the fact that the Deans were acquitted after a jury trial, whereas Bloxham admitted through his prosecution agreement that there was probable cause to arrest him for criminal mischief. Mountain West argues that *Dean* does not state a rule that summary judgment can never be granted as to an alleged bad faith denial of coverage for intentional acts. In support, Mountain West refers to *Smith v. State Farm Ins. Co.*, 264 Mont. 129, 870 P.2d 74, 76 (Mont. 1994), in which State Farm denied coverage based on the intentionality of the insured, Smith's, act of hitting another. Although Smith denied an intent to hurt his victim, arguing that it was an involuntary reflex, evidence to the contrary appeared from the guilty verdict against him, coupled with Smith's admission at trial that his victim was hurt when he hit her. *Id.* at 75. Under these facts, the court found that Smith's acts, by their very nature, evinced an intent to harm. *Id.* at 76. Thus, summary judgment in favor of State Farm was affirmed. *Id.*

Similarly, in *New Hampshire Ins. Group v. Strecker*, 244 Mont. 478, 798 P.2d 130 (Mont.1990), Strecker, the insured, sexually abused his daughter. Strecker testified that he did not intend to harm his daughter. *Id.* at 130. Strecker pled guilty to felony sexual assault. Subsequently, the daughter filed a civil action seeking damages resulting from her father's abuse. Strecker tendered this lawsuit to his insurer, who refused to pay, based on the intentional nature of Strecker's acts. *Id.* at 130–31. The Montana Supreme Court upheld the denial of coverage, finding that there was no evidence to show that Strecker did not intend to molest his daughter. The court stated simply that "[s]uch actions are not accidental." *Id.* at 131–32. Furthermore, the court noted that Strecker was not suffering from a mental disability. The court stated that "[e]vidence of diminished mental capacity might preclude the insured from forming the requisite intent to harm." *Id.* (cita-

tions omitted). Finally, the court noted that Strecker's guilty plea could be introduced in the civil action as an admission. *Id.* (citations omitted).

Following *Strecker,* the Montana Supreme Court has consistently held that actions such as biting, kicking and hitting are "per se intentional and the intent to seriously injure is evident from the commission and type or nature of the act itself." *American States Ins. Co. v. Willoughby,* 254 Mont. 218, 836 P.2d 37, 40 (1992). When the insured attempted to characterize such actions as raising a factual issue regarding intent, the court has rejected that characterization, upholding summary judgment in favor of the insurer. *See, e.g., Mutual Service Cas. Ins. Co. v. McGehee,* 219 Mont. 304, 711 P.2d 826, 828 (1985) (insured punched another in the face); *see also Safeco Ins. Co. of America v. Tunkle,* 997 F.Supp. 1356, 1360 (D.Mont.) (finding that an act taken in self-defense is the opposite of willful wrongdoing, and thus does not fit the public policy behind the per se intentional cases).

■ Based upon these "per se" cases, Mountain West argues that the criminal mischief proceedings against Bloxham require a finding that there was a reasonable basis for Mountain West to conclude that Bloxham's conduct was intentional and thus a reasonable basis for it to deny coverage.[4] While initially pleading not guilty to the charges against him, Bloxham ultimately entered into an Agreement for Deferred Prosecution in which he admitted there was probable cause to arrest him for criminal mischief, an intentional act crime. *See* Mont.Code Ann. § 45–6–101(1)(a) (defining criminal mischief as "knowingly or purposely" injuring or destroying property).

Contrary to Mountain West's attempts at analogy, the Court finds that the "per se" cases are distinguishable from the instant case in one significant aspect. In the

"per se" cases, the court was presented with the insured's guilty plea or jury verdict of conviction, or with the insured's admission, under oath, to knowingly committing the act(s) in question. Further, in these cases, the court did not find evidence of, or was not presented with allegations of mental defect or other mitigating circumstances. In contrast, Bloxham has never admitted to his intent in court, nor did he plead guilty. Although he has changed the medical basis, Bloxham has always maintained he was not sound of mind on the night in question. Further, the deferred prosecution agreement merely concedes probable cause. That distinction from the per se cases is considerable.

■ An admission of probable cause is a far cry from a guilty plea. Probable cause to arrest is defined as those facts and circumstances within an officer's knowledge that are sufficient to warrant a prudent person to believe that the suspect has committed an offense. *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). As Justice Marshall once remarked:

> In *Brinegar v. United States,* ... the Court confirmed the unremarkable proposition that police need only probable cause, not absolute certainty, to justify [an] arrest .... As Brinegar makes clear, the possibility of factual error is built into the probable cause standard, and such a standard, by its very definition, will in some cases result in the arrest of a suspect who has not actually committed a crime.

*Illinois v. Rodriguez,* 497 U.S. 177, 196, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (Marshall, J., dissenting) (citations omitted).

This Court cannot place the significance on the criminal proceedings against Bloxham that Mountain West urges. Outside of the "per se" intentional act cases, the Montana Supreme Court has consistently

4. It must be remembered that Mountain West's knowledge of these facts was gleaned from newspaper articles.

held that whether an insurer had a reasonable basis to deny coverage is a factual issue not generally subject to disposition by summary judgment. *See, e.g., De-Bruycker v. Guaranty Nat. Ins. Co.*, 266 Mont. 294, 880 P.2d 819, 821 (1994) (disputes over the adjustment procedures for crop hail damage raised a genuine issue of material fact as to whether insured would be liable under the UTPA); *Dean, supra; Dees*, 861 P.2d at 147–48 & 152 (a scant investigation of crop hail damage raised an issue of material fact as to liability under the UTPA).

In contemplating the merits of the arguments presented, it became evident that, in deciding whether an insurer had a reasonable basis to deny coverage, this Court must decide what time-frame controls the issue. Must the fact finder look only to those facts known to the insurer before and up to the moment of denial? Or may the insurer justify, *post hoc*, its decision, by pointing to facts and circumstances that developed after its decision to deny? In other words, is the evidence of reasonableness limited to a snapshot, or may the insurer present a moving picture?

The statutory language counsels the first approach; it frames the defense as whether "the insurer *had* a reasonable basis in law or in fact for contesting the claim...." Mont.Code Ann. § 33–18–242(5) (emphasis added). Further, because it establishes a duty to "conduct[ ] a reasonable investigation based upon all available information," it would turn the statutory scheme on its head to allow an insurer to first deny coverage and later justify its decision with information obtained after the decision was made. *See* § 33–18–242(1) (incorporating the duty to conduct a reasonable investigation from § 33–18–201(4)). Unfortunately, the Montana Supreme Court has not been faced with this question.

This Court declines to decide the issue at this juncture. Undoubtedly the issue will be resurrected at trial, in the context of what evidence the jury may consider relative to the issues raised in this motion.

Nonetheless, the Court will not yet cross that bridge. At this time the Court is prepared to find only that Mountain West has failed to show, as a matter of law, that it had a reasonable basis in law and fact to contest Bloxham's claim.

### Should Bloxham be Judicially Estopped from Claiming his Actions were Unintentional?

■ As an alternative argument, Mountain West urges that Bloxham should be judicially estopped from arguing that his conduct was not intentional (i.e., from attacking Mountain West's reliance on the newspaper report of Thatcher's affidavit which states that Bloxham admitted he knew what he was doing), given the proceedings in the criminal action against him.

■ Judicial estoppel is an equitable doctrine, invoked by a court at its own discretion, and driven by the specific facts of a case. *See Yanez v. United States*, 989 F.2d 323, 326 (9th Cir.1993). Judicial estoppel precludes a party from gaining an advantage by taking one position in a judicial proceeding, and then seeking a second advantage by taking an incompatible position in a later judicial proceeding. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir.1996). Federal law governs the application of judicial estoppel in federal court. *Id.* at 603.

Mountain West argues that Bloxham should not be permitted to concede in his criminal case the existence of facts sufficient to allow an inference of a probability that he committed an intentional crime, then argue in this civil case that it was unreasonable for Mountain West to have made the same inference in denying coverage.

This Court is unpersuaded. An admission of probable cause may not be inflated to the level Mountain West urges. Defendants in criminal cases routinely concede probable cause. As discussed above, such an admission is not an admission of guilt. Thus, by making such an admission in a criminal context, a defendant does not take

an inconsistent stand by later arguing that his insurance company did not have a reasonable basis to deny coverage.

## MOTION TO BIFURCATE

■ Mountain West has moved to bifurcate the breach of contract claim from the UTPA claim at trial, should this Court decide against it on its motion for summary judgment. Given the above finding, this Court must now address the issue of bifurcation. A federal district court,

> in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues....

Fed.R.Civ.P. 42(b); *see also Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 575 (9th Cir.1995). In diversity cases, a federal procedural rule applies when it "covers the point in dispute," even if it conflicts with state law, *Hanna v. Plumer*, 380 U.S. 460, 470, 473–74, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), at least where no conflicting state rule "would substantially affect ... primary decisions respecting human conduct." *Id.* at 475, 85 S.Ct. 1136 (Harlan, J., concurring). "[The] rule governing bifurcation is a clear example of a rule of adjudication, with virtually no impact upon primary conduct." *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir.1990); *see also Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 14–15 (2d Cir.1988) (permissible not to bifurcate liability and punitive damage issues despite state law requiring bifurcation).

■ On the issue of bifurcating a contract claim from a UTPA claim, Montana state law does not conflict with federal law.[5] *See Malta Public School Dist. A and 14 v. Montana Seventeenth Judicial Dist. Court*, 283 Mont. 46, 938 P.2d 1335, 1338 (1997) (presented with the issue of whether to bifurcate an insurance UTPA claim from a breach of contract claim, finding "there should be no difference in result under the Montana rule [42(b)]" than under the federal rule, and applying a broad discretionary standard). Thus, the Court will look to federal law for guidance. As the language of the federal rule reflects, a court has broad discretion in deciding whether to bifurcate issues for trial. *Carlstrom v. United States*, 275 F.2d 802 (9th Cir.1960).

■ In the instant case, the issues presented by the two counts are extremely intertwined. The issue of whether Mountain West had a duty to cover Bloxham's claim will require evidence of the intentional nature of Bloxham's actions. Likewise, as fully discussed in the context of the summary judgment motion, Bloxham's intention is central to the UTPA claim. Witnesses and evidence would be duplicated extensively were the claims tried separately. Further, it would be difficult to limit the testimony of witnesses to each claim separately. Thus, judicial economy militates in favor of a unified trial. *See Light v. Allstate Ins. Co.*, 182 F.R.D. 210, 213 (S.D.W.Va.1998) (declining to bifurcate upon finding that "swift judicial resolution" of the case, convenience, and incentive to settle prior to trial tipped the balance, in light of overlapping evidence in insurance bad faith and coverage claims); *see also Miller v. Fairchild*, 885 F.2d 498,

5.  Under the UTPA, bifurcation is permissible. *See* Mont.Code Ann. § 33–18–242(6)(a) (allowing bifurcation "where justice so requires"). In contrast, Montana law requires bifurcation of punitive damages: "the amount of punitive damages must ... be determined by the jury in a[] ... separate proceeding ...." Mont.Code Ann. § 27–1–221. Although a motion to bifurcate the damages phase of the trial is not presently before the Court, the parties assume that such bifurcation will occur in the instant case. The Court only notes that bifurcation of the damages phase is not a settled issue, and as mentioned above, even when required by state law, bifurcation is not mandated in federal court. *See Shugart v. Central Rural Elec. Co-op.*, 110 F.3d 1501, 1504 (10th Cir.1997) (affirming bifurcation despite state law requiring unified trial).

511 (9th Cir.1989) (reversing the trial court's decision to bifurcate where the bifurcated issues were so intertwined that their separation tended "to create confusion and uncertainty").

In exercise of its discretion, this Court finds that bifurcation would be undesirable in the instant case. However, this Court will entertain briefs on Mountain West's request to limit evidence of and reference to the UTPA claim during voir dire and possibly other stages of the trial. The briefs should address the propriety of such limitation. Mountain West should also discuss the specifics of how this Court should best accomplish the requested limitations.

## CONCLUSION

In accordance with all of the above,

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Bifurcate Counts I and II for purposes of trial is **DENIED.**